BUSEY<br>*vs*<br>HARDIN, &c.

---

## Busey *vs* Hardin, &c.

APPEAL FROM THE ANDERSON CIRCUIT.

*Commissioner's sale.    Fraud.    Purchases by counsel.*

JUDGE MARSHALL delivered the Opinion of the Court.

UPON the bills of two complainants, separately filed in the Anderson Circuit Court, but afterwards consolidated, a decree was rendered declaring fraudulent a conveyance of 350 acres of land from W. Harris to J. H. Busey, and directing the land to be sold for the satisfaction of the

MOTION.<br>Case 132.<br><br>May 30.<br>The case stated.

demands set up by the complainants, amounting in the aggregate to less than $250, but giving precedence to the debt of W. W. George, whose bill was first filed. At the sale by the Commissioner, J. D. Hardin, who had filed the bills and obtained the decree as counsel for the complainants, being the highest bidder became the purchaser at the price of $115, payable in three months, which he afterwards paid. And on the coming in of the Commissioner's report, Busey, in pursuance of a notice previously given to Hardin and the two complainants, moved to set aside the sale and report on various grounds, and accompanied the motion with a tender of the amount bid by Hardin, with ten per centum thereon, of which he had given notice, and also with an offer to pay into Court immediately, the residue of the decree, being the debt of the complainant Elliott, which was not satisfied by the sale. The two creditors united with the purchaser in opposing the motion; and the Court having confirmed the sale and report, and ordered a conveyance to be made, Busey prosecutes this writ of error to reverse that order and decree.

*The grounds relied on for setting aside the sale.* The specific ground upon which it is now insisted that the sale should have been set aside, are: 1st, that the land was sold at a great sacrifice, the sum at which it was struck off being less than one tenth of its value—2d, that the counsel or attorney who had managed the suits and obtained the decree was the purchaser—3d, that the sale was conducted with comparative privacy, and was too hastily concluded, without giving a fair opportunity for persons who might be disposed to bid to know that it was going on—4th, that Busey having offered full reimbursement to the purchaser, and full payment of the decree, the confirmation of the sale was an abuse of the sound equitable discretion of the Chancellor.

It appears that at the lowest estimate, the land at the time and on the terms of the sale, was worth $1200; and one of the witnesses states that he had intended to bid, but being on the bench of the County Court then in session, he did not know that the sale was going on until after it was over; that he would have bid the entire amount of the decree for one half of the land. The sale

took place as directed in the decree, at the court house door and on a court day. There were but ten or twelve persons present, of whom the purchaser and another were the only bidders. And although there were persons in the court house, and a crowd in the street at about one hundred yards distance, it does not appear that it was known to any except those immediately present that the sale was going on. The precise time during which the sale was continued is not proved, but it may be inferred from facts proved, that it did not exceed fifteen minutes, and was probably considerably less. The Commissioner stated that his report showing a compliance with the terms of the decree, was true; that there was no fraud or unfairness on his part or on that of others; that when the land was offered Busey forbid the sale, on which he had expostulated with him. It was proved that before the sale, both the Commissioner and Hardin who had became ·the purchaser, had advised Busey to pay up the amount of the decree as a means of avoiding a sacrifice, or of completing his title. And it may be assumed as shown by the record of the suits in which the decree was rendered, that Harris, &c. the debtors, had no other means of satisfying the decree except the land or the price of it due from Busey, who it appears had become responsible for Harris for between five and six hundred dollars, the amount of his debt to Lillard, in compromise of a suit brought for its coercion, about the same time with those on which the decree was rendered.

The two prominent facts, that the land was sold at a grossly inadequate price, and that the counsel who had obtained the decree and represented the complainants was the purchaser, have often been noticed by Chancellors as being calculated, even when separately considered, to excite the most vigilant scrutiny into all circumstances which might affect the fairness or demonstrate the unfairness of the sale. The latter fact alone, that the purchase was made by the attorney, has sometimes been deemed sufficient to vitiate a sale as being against "the policy of justice." And although this Court has not gone so far as that, it is said, that a sale at which the attorney purchases at a grossly inadequate price, should be

BUSEY
*vs*
HARDIN, &C.

Great inadequacy of price, and a purchase by compl'ts counsel have separately been noticed by Chancellors as grounds for scrutinizing and setting aside sales under decrees—the latter has been sometimes considered sufficient as "against the policy of the law."

considered as, *per se*, in the twilight between legal fraud and fairness, and that slight additional facts, exhibiting a semblance of unfairness, would be sufficient to vitiate the sale or make the purchaser a trustee: *Howell's heirs* vs *McCreery*, 7 *Dana*, 389–90, and cases cited; *For man, &c.* vs *Hunt*, 3 *Dana*, and cases cited. These authorities establish a distinction more or less broadly marked in the opinions of different Chancellors, between the case of a purchase by a stranger, and by the attorney or counsel who has had the management of the suit.

More slight additional facts tending to show unfairness in a sale will incline the Chancellor to set aside a sale where the complt's counsel is the purchaser—and it devolves on such an one purchasing, to some extent, to show entire fairness in the sale.

If there be any ground for such a distinction as we think there is, it rests upon the superior knowledge of the right and of the subject of sale which the attorney has, by reason of his connection with the suit, and upon the presumed influence which he has over the time and manner of the sale, and over the person who makes it, by reason of his representing the party for whose interest primarily, the sale is to be made. The effect of this distinction, if any weight be allowed to it, must be that slighter additional facts, tending to show unfairness, will suffice to vitiate the sale in one case than in the other. A stranger unconnected with the suit and with the person making the sale, may perhaps rely upon a literal compliance with the requisitions of the decree as entitling him to the benefit of his speculation, if he has himself done nothing unfairly to affect the sale. The attorney being himself, to some extent, implicated in the management of the sale, must show that it is perfectly fair—that the spirit and true intent of the decree has been complied with, and that due regard has been paid to the interest of all concerned, by making such effort as the circumstances indicate to be fair and reasonable to get the best price that can be procured for the property. And surely if the circumstances demonstrate that a fair and reasonable effort has not been made to get the best price, and that in consequence of this failure, the attorney has been able to make a great speculation with a corresponding loss to the party on the other side, neither the principles of equity nor that policy which consults the stability of judicial sales, and the confidence which should be reposed in them, requires that the attorney should be con-

firmed in his speculation, and especially if the disaffirmance of the sale could be attended with no injury, not even the injury of delay to the party to whose benefit the sale is decreed.

The Chancellor takes no delight in being the instrument of speculation to one and of loss to another party. It is with great repugnance and only in obedience to the policy just indicated, and to the necessity of regarding primarily, the interest of the party who seeks, and is entitled to relief, by having his demand coerced, that he is often compelled to confirm sales fairly made, but at an inordinate sacrifice.   According to a practice which has prevailed in England, so little right does the highest bidder at the Commissioner's sale acquire by that single circumstance, that although the fairness of the sale be unimpeached, the Chancellor will often, and perhaps generally, open the biddings upon the offer and deposit of a moderate advance upon the former bid.

This practice, it is true, does not prevail in this State, but it is not to be doubted that the Chancellor here as elsewhere, has a broad discretion, limited only by sound equitable considerations, in the approval or disapproval of sales made by his commissioner.   The accepted bidder at such a sale acquires by the mere acceptance of his bid no independent right as in the case of a purchase under execution, to have his purchase completed, but is nothing more than a preferred bidder or proposer for the purchase, depending upon the sound equitable discretion of the Chancellor for a confirmation of the sale made by his ministerial agent: *Forman, &c.* vs *Hunt,* (3 *Dana,*) *Campbell* vs *Johnson,* (4 *Dana.*)   In determining this discretion, a regard to the interest of the creditor and to the stability of judicial sales, has necessarily a large influence.   It is this policy which has rejected here the practice of opening the biddings simply on the offer of an advanced bid.   But there is a still higher policy, that of maintaining the purity of decretal sales and of preserving the public confidence in their entire fairness, which must override even the policy of giving stability to them; and the Chancellor, whose sanction of a sale by his com-

The Chancellor takes no delight in being the instrument of speculation to one party and of loss to another party—and the English Chancellors not unfrequently order the biddings to be opened on the offer and deposit of a moderate advance on the sale.

The highest bidder at sales under decrees, does not, like a bidder at sheriff sale under execution, acquire any independent right to have the purchase completed, but is nothing more than a preferred bidder or proposer for the purchase, subject to conffirmation by the Chancellor.

BUSEY
*vs*
HARDIN, &c.

missioner, makes it his own, can never lose sight of this highest element of equitable discretion.

Giving effect to these principles, and considering the advantages which the attorney for the successful party in the suit has, when he becomes a bidder for the subject of the suit, we think it is going far enough in his favor to say that his purchase, at a grossly inadequate price, should not be deemed absolutely unavailing; and we concur fully in applying to such a purchase what was said in *Howell's heirs* vs *Mc Creery*, that it is in the twilight between fairness and unfairness, requiring but slight additional facts, exhibiting a semblance of unfairness, to avoid purchase or make the purchaser a trustee.

The fairness required in manner, &c. in sales by commissioners, not easily defined, and depend principally on the circumstances existing at the time, and must be left to the discretion of the commissioner and the counsel, who, from his connection with the suit and, Court, is under obligations to see that all is fairly done, so far as he acts at all, and if he attend a sale it is presumed to be for that object.

It has already been intimated that the fairness requisite to support such a purchase, consists not merely in the observance of the formal requisitions of the decree, which would give the sale such a semblance of fairness as might, perhaps, support a *bona fide* purchase by a stranger, at whatever sacrifice to the owner, but also in a fair and reasonable effort at the time of the sale, to get the best price that can be procured. The precise manner in which this effort is to be made, and the precise extent to which it is to be carried, may be unsusceptible of definition. They must depend principally upon the circumstances existing at the time, and must be left mainly to the discretion of the commissioner who conducts the sale. But that it is his duty to make such an effort, though not expressly prescribed by the decree, is necessarily implied in the nature of his office, and of the thing which he is commissioned to do, as well as in the character and principles of the Court, whose representative he is; and even the counsel is under some obligations arising from his connections with the suit and with the Court. Having obtained the decree, and being entitled and presumed to have some control over its execution, he is so far as he acts at all, under similar obligations with those of the commissioner himself, and his attendance on the sale should be presumed to be, in part at least, for the purpose of seeing that the commissioner fully performs his duty, or at least of advising him in this respect.

When, therefore, instead of performing this duty on his part, he puts himself in opposition to it by becoming a bidder for his own benefit, and instead of preventing a failure of duty on the part of the commissioner, he takes advantage of it with a view of realising a speculation for himself; and when, moreover, the failure of the commissioner to make a fair effort to obtain a better price, may, to some extent, however slight, be attributed to the fact that the counsel has become a bidder, we think these additional facts exhibit such a semblance of unfairness as should induce the Chancellor to disapprove and set aside the sale; and especially when the only question affecting the interest of any of the parties, is whether the purchaser shall realize an enormous profit, with a corresponding loss to the owner of the property.

A slight reference to the facts already detailed, will suffice to make a proper application of these principles to the present case. The commissioner and the counsel both knew that the land was going for not more than about a tenth of its value, and for not more than half of the debt for which it was decreed to be sold; and they both had rason to believe that the land being thus sold, there was no other property or means of satisfying that portion of the debt which might remain; and yet, although the sale was made within a few feet of a number of persons in the court house, and within a few yards of many others in the streets, it does not appear that it was known to any others besides the ten or twelve who were immediately present, of whom two only were bidders, or that there was any effort made either by loud proclamation or otherwise, to make it known to any others or to attract the attention of the public, or that the sale was continued for such a length of time as to afford a fair opportunity for diffusing, by casual means, the information of the fact that it was going on. What might not, under other circumstances, be deemed undue. haste or privacy in conducting the sale, must, as we think, be so deemed under the circumstances above noticed. And as it cannot be doubted that the paucity of bidders and the smallness of the sum bid, must be attributed mainly to this comparative haste and privacy, we think it may be fairly

BUSEY
vs
HARDIN, &c.

When counsel for complainant attend commissioner's sale, not to prevent a failure of duty by com'r. but for the purpose of becoming a bidder, it presents such a semblance of unfairness as should induce the Chancellor to set aside the sale, where there was great inadequacy of price.

When the purchaser at commissioner's sale was complainant's counsel, and knew that the land offered was all the property to be had to satisfy the demand, and the property going for about a tenth of its value, and made within a few feet of the court house where there were many persons and many others in the streets, and 10 or 12 only immediately present, no loud proclamation to call the attention of those at that distance, all circumstances showing that the com'r. did not make a fair effort to procure the best price; and his conduct was acquiesced in by the counsel and the sale should be set aside.

presumed that the haste at least with which the sale was concluded, may be ascribed in part, if not wholly, to the fact that the counsel for the parties for whom the money was to be raised, was the bidder.

That the circumstances indicated to the commissioner the duty of not striking off the land for so small a bid without first ascertaining that there was no reasonable ground for expecting an advance bid, and that this was not ascertained in a manner which should have been satisfactory to him, is sufficiently manifest. Let it be supposed then, that the counsel for the creditors had not attended the sale; we think it must be presumed that the commissioner, feeling that the entire responsibility of the proceeding rested on him, would not have closed the sale at a bid so far below the value of the land, and which not only left one half of the decree unsatisfied, but actually lost to the creditor, until he had, by loud and repeated proclamations, invited the attention of all within the range of his voice, nor until he had so prolonged the sale as to leave no reasonable ground for expecting farther bids; or if the counsel had attended, not as a bidder, but as the representative of his clients, intent only on having their debts made, is it probable that the sacrifice of the debt of one of his clients would have taken place without some further effort to procure additional bidders? This cannot be presumed. And the fair inference is, that the commissioner seeing the counsel for both complainants a bidder for the land, supposed, as he had a right to suppose, that he was taking care of the interest of both of his clients, and that at least the first object of the sale, the satisfaction of both debts, would be accomplished at whatever nominal price he might purchase the land. He might possibly have supposed that he was purchasing merely as a security for the debts of the complainants. But waiving this last supposition, it is sufficient that the failure of the commissioner to make a fair effort to get a better price, was wholly or in part owing to the fact that the counsel was a bidder; and indeed there being such a failure and the counsel being the preferred bidder, the *prima facie* presumption is, that the latter circumstance was the cause, wholly or in part, of the first. And we

make this presumption in the present case, without imputing or supposing that there was the slightest intentional fraud on the part either of the counsel or the commissioner. We will add that the main ground on which we think the report and sale should have been disaffirmed, is that the commissioner did not make a fair effort to get the best price for the land, and that the counsel, who was the purchaser, acquiesced in this failure of duty.

Nor is it material to the present inquiry, that either in obedience to his duty to his clients, or by arrangement with them prior or subsequent to the sale, the counsel has satisfied, or has undertaken to satisfy the whole amount of the decree, and has thus propitiated the concurrence of both his clients in support of his purchase. This circumstance does not affect the question whether the sale was fairly conducted and with a reasonable effort to procure the best price, nor does it lessen the injury produced by the failure in this respect, either to the debtor or to the claimant of the property. For although the original creditors may be entirely satisfied, one half of the debt still remains as a charge against the debtor; and although the claimant of the land is perhaps no better off than if the counsel had bid the whole amount of the decree for the whole tract of land, yet he is, in all probability, much worse off than if a fair effort had been made to procure a fair price for the land which was prevented, as has been seen, by the conduct of the commissioner and the counsel; and if such efforts had been made as that the biddings had been carried up to the value of the decree, it cannot be assumed that they would have then stopped at one fifth of the value of the land, but the presumption is, that at a fair sale, on a County Court day, when one person at least had intended to bid the amount of the decree for one half of the land, some portion of the land would have been left to the claimant, Busey.

It is contended, however, that Busey had no right to complain of the sale and of the inadequacy of the price bid, because of his having forbidden the sale, claiming to have a deed for the land. But conceding that, *prima facie*, this imprudence on the part of Busey might be presumed to have affected the subsequent bidding to some

*Marginalia:*

BUSEY
*vs*
HARDIN, &c.

When property has been sold by the commissioner of a Chancellor at a very inadequate price, and failed to satisfy the debt required to be made, & bought by complainant's counsel, and com'r. has not used proper efforts to procure the best price, it will be no ground for refusing to set aside the sale that the purchaser has, subsequent to the sale, agreed to satisfy the decree in favor of his client, to sustain this purchase.

The conduct of one to whom land has been fraudulently conveyed in forbidding the sale, claiming title, &c. when a sale is decreed by the Chancellor, the

conveyance not-
withstan d i n g ,
does not absolve
the com'r. of the
Court from still
using all proper
exertions to pro-
cure a fair price
at the sale. The
counsel should
have explained
away the effect
of such declara-
tions by one who
was concluded
by the decree in
the case.

extent, it surely did not absolve either the commissioner or the counsel of the complainants from their duty of conducting the sale fairly, with a view to obtaining the best price for the land, and of course it did not deprive him of his right to object to the sale for a failure in this respect. But in point of fact, it cannot be supposed that the biddings were, in any degree, affected by this conduct of Busey. For it does not appear that he presisted in his opposition to the sale after the remonstrance of the commissioner. But if the commissioner explained the subject to the bystanders, as he should have done even if Busey had not interposed, all must have been satisfied that, being concluded by the decree, his opposition was of no consequence, and if this was not explained, this omission, coupled with the knowledge of the counsel who made the purchase, derived from his connection with the suit, would itself be a strong circumstance condemnatory of the sale.

It remains only to say, in answer to an objection made in this as well as in the Circuit Court; that although the conveyance to Busey was pronounced fraudulent, it was only avoided for the benefit of the complaining creditors and to the extent of their demands; and that, consequent-ly, the title to so much of the land as might remain after satisfying this decree, would, so far as these parties are concerned, remain or re-vest in Busey. Whence it follows that he was deeply interested in the sale, and especially in the question whether the whole or a part of the land should be taken. He had, therefore, an undoubted right to make the motion to set aside the sale, and also to prosecute this writ of error for reversing the decree confirming it.

Wherefore, the decree and order overruling said motion, and confirming the report and the sale to Hardin, and ordering a conveyance to him, is reversed, and the cause is remanded with directions to set aside the report and sale, upon Busey's paying into Court, on a day to be named, the sum bid and paid by Hardin, .with ten per centum thereon, as offered, and legal interest on the aggregate amount from the day of its former tender in Court, and also the balance which may be due on the

principal decree in favor of the complainants, George and Elliott, after crediting the net sum produced by the sale to Hardin; the said sums to be disposed of by the Court according to the respective rights of Hardin and the complainants, seeing that the decree is fully satisfied.

*Owsley & Goodloe, Hewitt and Draffin* for appellant; *J. D. Hardin and S. Todd* for appellees.