## JONES & BLAIR *vs.* BURDEN.

1. When the decree of sale, in a suit for the foreclosure of a mortgage, authorizes the register to receive the amount bid and to make a conveyance, the bidder must be considered as the purchaser, from the time he receives a deed from the register. From that time the property is at his risk, and he cannot repudiate the contract, although the sale may be set aside, before confirmation, for irregularities.

2. A judgment creditor may redeem lands sold under a decree of foreclosure, *before the sale is confirmed*, when the purchaser has paid the price and received a deed from the register.

3. A purchaser who would prevent a redemption of the lands by a judgment creditor, by crediting the debtor with the amount proposed to be advanced, must also be a *judgment* creditor.

4. The death of the judgment debtor after the sale under decree, does not affect the judgment creditor's right to redeem, although the lien of his judgment may be thereby lost.

ERROR to the Chancery Court of Mobile.

Hon. J. W. Lesesne, presiding.

The facts of this case, as they are exhibited by the bill, answer and exhibits, may be thus stated: William Jones, one of the plaintiffs in error, as executor of Hiram Cheesborough, deceased, filed his bill in the Chancery Court of Mobile, to foreclose a mortgage executed by John Mayrant and wife, on certain real estate described in the pleadings of this case, and at the April Term, 1848, obtained a decree of foreclosure, by which the Register was directed to sell the land in the same manner that sheriffs are required by law to sell real estate. By this decree the mortgage debt was ascertained to be $20,944. In June, 1848, the Register sold the land for two hundred and sixty dollars, and Jones (the executor) and Henry H. Blair, became the purchasers. The Register executed

to them a deed, and they took possession of the land; but the sale has never been confirmed by the Chancellor, nor does it appear that the Register ever made a report of his sale to the court. Mayrant and wife died subsequent to the sale, and the suit was ordered to abate. The amount bid at the sale, less the costs, was entered as a credit on the mortgage debt, the balance of which is still unpaid.

The complainant in this bill obtained a judgment at law against John Mayrant, in 1840, for the sum of seventeen hundred and fifty-eight dollars, besides costs of suit, upon which execution was issued, and returned in April, 1841, "no property found." The complainant having tendered the purchasers the amount bid for said land at the sale, together with ten per cent. per annum thereon, filed this bill to redeem the land, under the act of 1842. The complainant's right to redeem was resisted on two grounds: First, that the sale was not perfect and complete, because it had never been confirmed by the Chancellor; secondly, Jones, the executor of Cheeseborough, offered to credit the mortgage debt with more than the amount offered by the complainant. The Chancellor, however, decreed in favor of the complainant, and the cause is brought to this court by writ of error.

CAMPBELL, for plaintiffs in error:

The cause was submitted on bill and answer by consent. The facts of the answer are thus admitted to be true, as therein stated. This answer shows, that before the tender, Mayrant had died, and that the suit in chancery abated. There never was a decretal order confirming the sale.

No title vested in the plaintiffs until the decree of confirmation; 8 Ala. 876; 6 ib. 411; 1 ib. 475; 2 ib. 256; 6 ib. 411; 1 S. & Marsh, 622.

The tender of the money was made prematurely by the defendant; 4 Humph. 371; 10 Yerger.

The defendant had lost his privilege of redemption by the death of Mayrant, and the consequent destruction of his lien. 12 Ala. 309.

ADAMS, for defendant:

1. Defendants say that the defendant Jones had a decree,

as executor, against Mayrant, and that both Blair and Jones offered to credit on it, according to the mortgage. Waiving the difficulty of both these parties allowing this credit, on a decree belonging to one, and also the incongruity of Jones making the credit as executor, so as to sustain his individual purchase, it is sufficient to object that a decree in equity is not such a debt as the statute contemplates. 12 Ala. 367.

2. That the sale wanted confirmation. The answer is, it was the duty of the purchasers themselves to have it confirmed; 2 Dan. Ch. Pr. 1455. A party who purchases under a judicial sale, and goes into possession, is estopped from denying title, 3 P. 126; 4 Ala. 21; 6 ib. 402; Brown v. Isbell, 11 Ala. 1015, 1022, in which case the Tennessee authority was cited, but disregarded by the court. The decree of sale directs this mode of sale, as by sheriff's sales. See Clay's Dig. 205, § 17.

DARGAN, C. J.—The plaintiffs in error contend that their purchase was incomplete, notwithstanding the Register executed to them a deed for the land, and that until the sale was confirmed by the chancellor, no judgment creditor of the mortgagor could file a bill to redeem. The solution of this question depends on this: at what point of time is the bidder to be considered the purchaser of real estate, sold under a decree of foreclosure? In England he cannot be considered as the purchaser until the sale has been confirmed by the Chancellor; for until then, the property is not at his risk, and if it be destroyed in the interim between the bidding and the confirmation, he cannot be compelled to take it. 2 Dan. Ch. Pr. 1455; Ex Parte, Minor, 11 Vesey, 559; 13 Vesey, 517; Sugden on Vendors, vol. 1, 60.

But a practice has grown up in this State different from the practice in England. There the bid is reported by the master to the Court of Chancery, but the purchase money is not paid, nor any conveyance executed to the purchaser, until the report of the master is confirmed; but here the purchase money is paid to the Register at the time of the bidding, and he, unless directed by the order of sale to the contrary, then executes and delivers to the purchaser a deed for the premises. This was the course pursued in the case before us, and

the purchasers obtained the possession of the land, and have occupied it ever since; and if we were to hold that it required a confirmation of the sale in order to render them purchasers, they have it in their power forever to prevent a judgment creditor of the mortgagor from redeeming, for they may decline to have the sale confirmed, and a judgment creditor has no power to compel them; and thus, from their own neglect in not procuring a confirmation of their purchase, they would reap a benefit. We think that, under the practice which has grown up in this State, we must hold the purchase complete from the time the bidder pays the purchase money, and receives a conveyance from the Register. From that period the property is at his risk, and he could not repudiate the purchase for anything afterwards intervening.

It is not, however, to be inferred that we intend to hold that the bidder, by paying the amount bid and receiving a conveyance, obtains an indefeasible title without a confirmation; for the practice is well settled, that the sale may be set aside before confirmation, for improprieties or irregularities in the sale. All that we intend to say is, that when the decree authorizes the Register to receive the amount bid, and make a conveyance, the bidder must be considered as the purchaser from the time he receives a deed. The case cited by the plaintiff's counsel from 4 Humphreys, Wood, Abbot, et al. v. Morgan, Allison et al. it is true is opposed to this view, but the practice in Tennessee corresponds with the English practice in this particular; the purchase money is not paid, nor is the deed executed, until there has been a confirmation of the sale; hence we do not consider that case as an authority in point. Nor can we assimilate sales under the decrees of Courts of Chancery, to sales by commissioners acting under the authority of the Orphans Court, for in such cases no conveyance is directed to be made until the report of the commissioners has been returned. The commissioners (unless, perhaps, they are otherwise directed by the order of sale) have only the authority to sell the land, and not the authority to execute a conveyance; the bidder, therefore, at such a sale, does not obtain the legal title until the commissioners report the sale to the Orphans' Court, and receive from that court the authority to convey, Bonner v. Greenlee's Heirs, 6 Ala.

411. But under the chancery practice that has grown up in this State, and from which we do not feel at liberty to depart, the Register may execute a conveyance upon receiving the amount bid, before he reports the sale to the Court of Chancery, and from the time the bidder receives his deed, the property is at his risk, and he cannot repudiate his contract; from that time, therefore, he must be considered as the purchaser, invested with the legal title, notwithstanding his title is liable to be divested for irregularities in the sale.

It follows from this view, that a judgment creditor may redeem before the sale is confirmed, for the purchaser is not compelled to have it confirmed, and may enjoy the property without a confirmation. The only effect that the confirmation can have under our practice is, to render the title of the purchaser indefeasible, that is, not liable to be set aside by the Chancellor, but he must be considered as the purchaser from the date of his conveyance.

The only remaining question is, whether the offer of Jones to credit the mortgage debt with the amount proposed to be advanced by the complainant on the amount of the sale, deprives the complainant of his right to redeem. The decisions of this court *have* settled the question that a *bona fide* creditor, within the meaning of the act of 1842, is a judgment creditor; and although there may be an actual debt due to one, he cannot redeem the land of his debtor that has been sold under judicial process, without showing that his debt has been reduced to judgment. The Branch Bank at Mobile v. Furness et al. 12 Ala. 367; Thomason v. Scales, ib. 309; Pollard v. Taylor, 13 Ala. 604.

From this it must follow, that a purchaser who would prevent a redemption, by crediting the debtor with the amount proposed to be advanced, must also be a judgment creditor. We cannot construe the term *bona fide* creditor, as used in the second section of the act of 1842, to mean a judgment creditor, and the same term in the third section to mean a creditor at large, or one who has an actual debt, whether reduced to judgment or not. The Legislature evidently used the words in the same sense in both sections of the act, and we must construe them to mean the same, whether found in the second or third section.

Nor can the objection avail the plaintiffs, that the death of Mayrant destroyed the lien of the complainant's judgment; for, notwithstanding the lien may be lost, the judgment remains, and the complainant is a judgment creditor.

We can see no error in the decree, and it must be affirmed.