## WITTER, PRO AMI *vs.* DUDLEY.

[BILL IN EQUITY TO RECOVER LANDS. ]

1. *Law of* 1841 *in relation to recording decrees; effect of.*—Under the statute of 1841, (Clay's Digest, 354, § 57,) which required decrees of the chancery court, vesting title to real property, in either of the parties to a suit, to be recorded in the office of the clerk of the county court, in which the property was situated, the vesting of the title was not dependent on the recording of the decree, but was affected by a failure to have the decree so recorded, as a deed would be under the registration laws ; and as between the parties and all persons who had notice, actual, or constructive of the decree, before acquiring any interest in the property, the title would be unaffected by a failure to record the decree.

2. *Purchaser has the right to call for and examine chain of title; what considered crassa negligentia.*—The following ruling in the case of *Johnson v. Thweat*, 18 Ala. 741, cited and adhered to : "A purchaser has the right to call and examine the chain of title to the land he is about to purchase, and if he neglects to do this, and purchases without seeing the deeds, through which he is to receive title, it is his own folly ; in the language of the authorities, it is *crassa negligentia,* and he can not protect himself from the consequences of notice, by insisting upon his own folly and neglect."

3. *Constructive notice; case of.*—D. purchased in 1851 of L. and S. and their wives, a large tract of land, for a valuable consideration, and took from them a warranty deed ; the title to a portion of this land thus sold, had by a decree of chancery court, in 1843, been divested out of the heirs of the ancestor F. L., of which L. was one, and vested it in L., as trustee for

Witter, pro ami v. Dudley.

Mrs. Lampkin, a sister of L. and one of the heirs of F. L., for her sole and seperate use, during her life, remainder to her children. In 1846, by another decree of the chancery court, the trustee was authorised to sell said lands, and invest the proceeds in other property, subject to the same trusts, with the approval, and under the supervision of the register, who (the register) was directed to report at the next term what had been done in the premises. No report of the sale was made to the court, and as far as appears, no sale was made under this order. Mrs. Lampkin and her husband were in possession of the lands, after the death of the ancestor, and continued in possession until some time in 1845 or 1846, and the lands then went into the possession of L., the trustee, and remained in his possession until he sold to D., who went immediately into possession, and has remained in possession ever since. D. was intimate with F. L. and his family, and knew that he died in 1837, in possession of said lands, and that Mrs. Lampkin was one of his heirs, and that she and her husband were in possession of the land subsequent to the death of the ancestor, and before the sale to D. He made no inquiries of the vendors, or any other person, about the title, nor called for an inspection of the title deeds, or an abstract ▸thereof, but relied on the possession of L. and S., and their assertion of title and the warranty clause contained in the deed of conveyance,— *Held*, 1. That D. was chargeable with notice of the equitable title of Mrs. Lampkin, and of the decree of 1843. 2. That D. can not be protected as a purchaser *bona fide*, to the extent of the title which L. once had to the land, as an heir of F. L. 3. That the legal title which was vested by the decree of the chancery court in L. as trustee for Mrs Lampkin, can not be available as a protection to D. under the conveyance of L. and S. 4. That the legal title held by L. under the decree of 1843, did not pass to D. by virtue of the order of sale of 1846, and the conveyance of L. and S.

4. *Sale by trustee under order of court; what is necessary to make valid.*— Where a trustee appointed by the court, and clothed with a trust created by the court, is upon an application for that purpose ordered to sell land, the legal title to which has been vested in him by the court, for the purpose of the trust, and he sells and conveys, no title can pass by any conveyance made by the trustee to a purchaser, until the sale is confirmed by the court, unless the order authorizes him to convey when he sells.—(*Per Byrd, J.*)

APPEAL from the Chancery Court of Lowndes.
Heard before HON. N. W. COOKE.

THE original bill in this case was filed on the 15th September, 1860, by Mrs. Mary D. Witter, by her next friend, against John Dudley. The bill was afterwards amended several times. In addition to the facts stated in the opinion of the court, the following are stated as appearing upon the record. In 1837 Francis Lewis died intestate, in the

39

county of Lowndes, leaving a large estate, real and personal in said county, and a widow and seven sons and daughters, among whom were Hamlin F. Lewis, and complainant, (appellant,) as his heirs at law. The heirs, all of whom were adults except the complainant, made partition and division of the estate without administration, and in that partition and distribution the land in controversy in this suit, together with a number of slaves, were allotted to complainant. In 1839, the complainant still being a minor, intermarried with one John B. Lampkin, who, in 1842, letters of administration on the estate of Francis Lewis having in the meantime been taken out to his widow, Mary D. Lewis, instituted proceedings in the then orphan's court, to reduce to his possession his wife's distributive share of the estate. On the 15th December, 1842, the complainant, by next friend, filed her bill in the chancery court of Lowndes county, against the administrator and heirs at law of Francis Lewis, and her husband John B. Lampkin, to set aside the former partition and distribution; to have a new partition and distribution of the estate; to enjoin her said husband from prosecuting the proceedings he had instituted in the orphan's court, and to have her share of the estate secured to her sole and separate use. At the term to which this bill was filed, the chancellor rendered an interlocutory decree, ordering partition and distribution, and appointing commissioners for that purpose, and at the December term, 1843, on the coming in of the report of the commissioners, rendered a final decree in accordance with the prayer of the bill. By this decree, the same land that had been allotted to her previously, was again allotted to the complainant, together with a number of slaves, and the title to the whole vested in Hamlin F. Lewis, in trust for her sole and separate use, during her life, and at her death, to such child, or children as she might leave surviving her. Hamlin F. Lewis, the trustee, was required by the decree to give bond, with sureties, in double the value of the personal estate and double the value of the income, rents, and profits of the real estate, and to render an account annually; neither of which was ever done. This decree was never recorded in the office of the judge of the

county court of Lowndes county. On the 3d July, 1846, the complainant and her said trustee filed an *ex parte* petition in the said chancery court, praying that the trustee be authorized to sell the said lands for five thousand dollars, the petition stating said price had been offered for them, and invest the proceeds in other lands and negroes. A reference was thereupon ordered, and upon the coming in of the register's report, the chancellor rendered a decree authorizing the trustee to sell and to invest the proceeds in other lands and slaves, subject to the same trusts, with the approval, and under the supervision of the register, who (the register) was directed to report at the next term what had been done in the premises, and the trustee was again required to account annually, which he never did. On the 15th day of October, 1851, the said Hamlin F. Lewis, and his wife, in conjunction with Robert L. Scott and wife, sold and conveyed the said lands, and other lands adjoining, which the said Scott bought from one Powell, by deed of warranty, to the defendant, (appellee,) John Dudley, for the aggregate price of $18,000 ; thirteen thousand of which was paid in cash, and the remaining five thousand in the note of a third person, due on the 1st day of January next thereafter, and which was paid at maturity. These payments were made at the time of the purchase. The said Dudley went into possession of the lands soon after the purchase, and has continued in possession ever since. Hamlin F. Lewis removed to Texas in 1853, and died there during that year. In 1840 the lands in controversy were in the possession of John B. Lampkin and his wife, and continued in their possession until some time in 1845 or 1846, when they removed from said lands, and the lands then went into the possession of Hamlin F. Lewis, and were cultivated by him with his own slaves, from that time until the sale to Dudley. John B. Lampkin removed with his wife and the slaves of the trust estate to Mississippi, in the latter part of 1849, and died in 1856, and complainant subsequently intermarried with her present husband, Franklin R. Witter. The defendant, (appellee) Dudley, for between ten and seventeen years prior to his purchase, lived in Dallas county, twenty or thirty miles

from said lands, but was very intimate with Francis Lewis and his family, frequently visited him before his death, and his family afterwards, and on such visits occasionally passed by said lands, which he knew as the property of said Francis Lewis. Dudley sets up the plea, that he is a *bona fide* purchaser without notice.

The chancellor dismissed the complainant's bill, and this ruling is now assigned as error.

RICE, SEMPLE & GOLDTHWAITE, for appellants.
WATTS & TROY, *contra.*

[No briefs in this case have come to the hands of the Reporter.]

BYRD, J.—I. This court has decided that the legal title to the lands in controversy vested in Hamlin F. Lewis, *as trustee*, under the decree of the chancery court, made in 1843.—*Witter v. Dudley*, 36 Ala. 135.

II. We do not think that the statute of 1841, (Clay's Digest, 354, § 57,) which requires decrees of the chancery court vesting title to property in either of the parties in a suit, to be recorded in the office of the clerk of the county court of the county in which real property is situated, makes the vesting of the title dependent on the recording of the decree; but is affected by a failure to have it so recorded, as a deed would be under the registration laws. As between the parties to the suit, the decree would certainly vest the title without recording the deed in the office of the county clerk. As to all persons who had notice, actual or constructive, of the decree, before acquiring any interest in the property, the title would be unaffected by a failure to record the decree. As between Mrs. Witter and H. F. Lewis, the decree of the chancery court at the December term, 1843, upon the bill for a partition and distribution, divested such legal title as the latter had as heir of Francis Lewis to the property settled upon the former, and vested the legal title thereto in him as trustee for her and the remaindermen; and without notice, actual or constructive, of this decree, Dudley would be protected as a

purchaser *bona fide* to the extent, at least, of the title which his vendor had in the land as heir of Francis Lewis.

It does not appear from the report of the case in 36 Ala. 135, that the decree had been recorded, yet this court held that the legal title to the land vested in H. F. Lewis, as trustee under the decree of 1843, and although he had not given the bond required thereby. And we do not wish to be understood as deciding that a decree of a court of equity, on partition and distribution of an estate, should be recorded in the probate court under the statute for any purpose, or that it is applicable to such a decree. But can Dudley be held to be a purchaser *bona fide* of any title to, or interest in the land?

III. Mr. Justice Story says, " in a great variety of cases, it must necessarily be matter of no inconsiderable doubt and difficulty to decide what circumstances are sufficient to put a party upon inquiry."—1 Eq. Ju. § 409*a*. And he and other jurists hold that no general rule can be laid down, and that each case must depend upon its own circumstances.— *Ware v. Egmont*, Eng. Law & Equity Rep. 94. He says, " whatever is sufficient to put a party upon inquiry, (that is, whatever has a reasonable certainty as to time, place, circumstances and persons,) is in equity held to be good notice to bind him."

It is said in Tiffany & Bullard on the Law of Trusts and Trustees, that " it is not always necessary to find that the purchaser had actual notice of the trust, for if the circumstances are such as enable the court to say, not only that he might have acquired notice, but that he ought to have acquired it, and would, had he not been guilty of gross negligence, his conscience will be deemed to be affected." p. 202.

It is said in Hill on Trustees, " it will in general be presumed, that every purchaser has investigated his vendor's title before completing his purchase; and if the title can not be made out, but through a deed, which gives or leads to notice of a trust, he will be assumed to have had notice of that trust; unless, indeed, he can show why he had not inquired into the title with a view to his protection."— p. 770. He further says, " it is settled, that whatever is

sufficient to put a purchaser upon an inquiry, which would lead to a discovery of the trust, will be good constructive notice."—p. 768.

On page 196 of Leading Cases in Equity, (Ware & Wallace, vol. 2,) it is laid down as the established doctrine, that a purchaser will have constructive notice of everything which appears in any part of the deeds or instruments, which prove and constitute the title purchased, and is of such a nature that if brought directly to his knowledge, it would amount to actual notice ; for the right of a purchaser can in no case go beyond his own title, and whatever appears on the face of the title papers, forms an integral part of the title itself," and cites in support the adjudications of several of the State courts, and then proceeds—"such notice, therefore, is of the most conclusive nature, and is insusceptible of being explained away or rebutted ;" and in support, cites *Johnson v. Thweatt*, 18 Ala. 741, and other cases.

In the case of *Chapman v. Glassell*, 13 Ala. 55, this court say, "want of notice of a fact which is the result of a want of that diligence which the law requires for its ascertainment, furnishes no ground for protection." In the case of *Johnson v. Thweatt, supra*, this court say, "a purchaser has the right to call and examine the chain of title to the land he is about to purchase ; and if he neglects to do this, and purchases without seeing the deeds, through which he is to receive title, it is his own folly ; in the language of the authorities, it is *crassa negligentia*, and he cannot protect himself from the consequences of notice, by insisting upon his own folly or neglect." This is stating the doctrine as strongly as in any of the books. But it is supported, as thus stated, by very respectable authority.—2 Leading Cases in Eq., W. & S. 153 ; *Jones v. Smith*, 1 Phil. Ch. R. 243, and cases therein cited. At the same time, it is conceded that other authority does not go so far. This case has never been overruled or questioned by this court, and we feel constrained to adhere to it. We admit the force and weight of the argument of the learned counsel for appellee in opposition to this doctrine. And we refer to, without citing, the authorities collected in the brief of counsel.

We proceed to make an application of the law to the pleadings and proofs in the cause in hand. Dudley denies that he had notice of the claim, interest or title of appellant when he purchased. No actual notice is proven. The appellant insists that he had constructive notice. The answer, with sufficient accuracy, sets up the defense of a purchaser *bona fide*; the evidence fully sustains this defense to *the extent* that Dudley paid a valuable consideration, and that his vendors were in possession, and one of them held the legal title as trustee for appellant and others. The main point in controversy is, do the facts and circumstances shown by the pleadings and proofs make out a case of constructive notice of the trust, or of the claim of appellant on the part of Dudley; or, in other words, does the law hold him chargeable with notice thereof?

The amended bill, to which a sworn answer was required and made, avers that Hamlin F. Lewis had no other right or title to the lands in controversy at the time of the sale to Dudley, except such as he had as trustee, nor did said Lewis and Scott at that time, "have any right, title or interest whatever in or to the said land," except such as Lewis had as such trustee. Dudley denies these allegations, and insists that Lewis *had title as an heir of Francis Lewis*, and states that his vendors were in possession of the lands at the date of his purchase, "and had been for several years cultivating them and using them as their own, and they represented to this defendant at the time of said sale, that they had title thereto, and had a good right to sell and convey the same to defendant, and he believed they had." Dudley proves in his deposition "that when he purchased, Hamlin F. Lewis informed witness that he (Lewis) owned in his own right the tract of land now claimed by complainant, and that Scott bought the balance of the tract purchased by witness from said Lewis and Scott, from Powell."

In his cross-examination, in reply to a question contained in the first interrogatory in these words : "Did you not know Francis Lewis; * * * and did he not die seized and possessed of the lands claimed by complainant in her bill of complaint?" He says, he knew Francis Lewis, "and

thinks he died possessed of the lands claimed by complainant." In the second cross interrogatory, he is asked: "Did you not know the facts elicited by the foregoing interrogatories before you purchased said lands from Hamlin F. Lewis and Robert L. Scott?" He answered: "Witness says he knew such facts as he has testified to, only, before the purchase of said land by him." His answers and the proof show that he knew Francis Lewis and his family before the purchase, and also that Francis Lewis died in 1837, in possession of the land, and that appellant was one of his heirs, and that she and her husband were in possession of the land subsequent to the death of her father, and before the sale to Dudley. The admissions of counsel show that Francis Lewis owned the lands as far back as 1824. It does not appear from the answer of Dudley or the evidence, that he made any inquiries of his vendors about the title, or called for an inspection of the title deeds or an abstract thereof. He seems to have relied on the possession of Lewis and Scott, and their assertion of title and the warranty contained in the deed of conveyance. The facts in evidence were sufficient to put him on inquiry, and if he had applied to the administrator of Francis Lewis, or to some of the heirs, and especially those who had been in possession of the land after the death of the ancestor, he would at least have either discovered the condition of the title or shown some excuse for not being able to do so. But there is no evidence that he even asked H. F. Lewis, the vendor and one of the heirs, how he had acquired the title of the other heirs, or anything about the title, or made any inquiry of appellant or the other heirs. It is true that the possession of Scott and Lewis was *prima facie* evidence of *seizin*, but possession alone is not sufficient evidence of the title against the real owner, when relied on as a protection to an otherwise purchaser *bona fide*. So the possession of Francis Lewis, the ancestor, was *prima facie* evidence of seizin, but that of itself could not defeat the title of such a purchaser, but if known to him, with the other facts known to the purchaser in this case, before the purchase, would be sufficient in law to put him on inquiry, which ought to have led him to a knowledge of the equitable title of appellant.

IV. Under the pleadings and proofs, and applying the doctrine above announced, we come to the conclusion that Dudley is chargeable with notice of the equitable title of appellant at the time he purchased, and of the decree of the chancery court at December term, 1843. He therefore can not be protected as a purchaser *bona fide* to the extent of the title which H. F. Lewis once had to the land as an heir of Francis Lewis.—*Neale v. Haythrop*, 3 Bland, 531, 586 ; 1 Gill & John. 270 ; *Nelson v. Allen*, 1 Yerg. 360 ; *More's Exr's v. Blackwell*, 6 B. Mon. 67 ; 2 Barr, 32 ; 11 Ohio, 465 ; *Hackwith v. Dumron*, 1 Mon. 237 ; *Jackson v. Rowe*, 2 S. & St. 472.

Nor can any legal title which was vested by the court in H. F. Lewis, as trustee for his sister, be available as a protection to appellee under the conveyance of Scott and Lewis. For, constructive notice of her rights affects alike either title— as heir or trustee—unless the latter has been conveyed to Dudley under the order of sale made by the chancery court in 1846.

V. Having come to the conclusion that Dudley must be held chargeable with notice of *the trust*, and the claim of appellant, the next question is, if he claims as a purchaser under the order of sale of 1846, did he acquire a title, discharged of the trust, from Lewis, the trustee, by virtue of that order and the deed of Lewis and Scott. It is apparent that Dudley did not contract to buy this title, and he disclaims, in effect, in one part of his answer, claiming under this title, although in another he sets it up, but avers that he had no notice of it at the time he purchased.

VI. It is the established doctrine of courts of equity, that where a trustee appointed by the court and clothed with a trust created by the court, is upon an application for an order to sell land, the legal title to which has been vested in him by the court, for the purposes of the trust, ordered to sell, and he sells and conveys, no title can pass by any conveyance made by the trustee to a purchaser, until the *sale* or *deed* is confirmed by the court ; or unless an order is made authorizing the trustee to convey when he sells. In this case, it does not appear that the sale was ever reported to the court, nor that any order was made for the trustee to convey title.

The legal title held by Lewis, under the decree of the court, therefore, did not pass to Dudley by virtue of the order of sale and the conveyance of Scott and Lewis.— *Webster v. Hill*, 3 Sneed, 333 ; *Anderson v. Faulk*, 2 Harris & Gill, 352 ; see opinion of Chancellor Bland ; *Brown et al. v. Wallace et al.*, 4 Gill & J., 479 ; *Busey v. Hardin et al.*, 2 B. Mon. 411 ; *Ex parte State Bank*, 1 Dev. & Batt. Eq. 75 ; *Tooley v. Kane et al.*, 1 Sme & Mar. (Ch.) 518 ; 3 Dana, 614 ; *Campbell, &c..v. Johnson, &c.*, 4 ib. 177 ; *Dickson's Heirs v. Talbot's Exr's*, 14 B. Mon. 60 ; *Miller v. Sherry*, 2 Wallace U. S. 248 ; *Taylor v. Gilpin*, 3 Met. (N. Y.) 544 ; *Sewall v. Castigan*, 1 Md. Ch. Dec. 208 ; ib. 331 ; *Jones & Blair v. Burden*, 20 Ala. 382.

In the case of *Jones & Blair v. Burden*, Dargan, C. J., in delivering the opinion of the court says, " all that we intend to say is, that when the decree authorizes the register to receive the amount bid and make a conveyance, the bidder must be considered as the purchaser from the time he receives a deed." In this we concur ; but to some of the expressions in that opinion, prior and subsequent to the above extract, we do not assent, but consider it as explanatory of, and as limiting those expressions. In order to convey the legal title under a sale made in pursuance of an order of a court of equity in a case like this, there must be a decree of the court vesting the title in the purchaser, or authorizing a conveyance of it to him. Dudley, therefore, has neither a legal nor equitable title which can prevail over that of Mrs. Witter.—1 Story Eq. § 395 ; 2 Sug. on Vend. 511, § 13.

If appellant had received the purchase money, Dudley would *perhaps* be protected against her claim or interest in the land, unless she had tendered or offered in her bill to refund the purchase-money, or if the trustee had given the bond required by the court, and had afterward received the purchase-money on a sale made in his individual character, in substantial conformity to the order of the court, then Dudley's title *might* be protected to the extent of appellant's interest in the land.

VII. It is contended that the evidence shows a purchase by H. F. Lewis of the land from Mrs. Witter, or that there

had been some agreement between them by the terms of which he either became the owner of said lands, or was fully authorized to sell and convey the same. We do not think that the evidence shows either. Such circumstances as are relied on are too weak and unsatisfactory to authorize us to come to the conclusion insisted on by counsel. From the high character of H. F. Lewis, it may appear singular that he should not have paid his sister for her interest in the land, or that he should have attempted to defeat the remaindermen, or that he should not have informed Dudley of the condition of the title. However strange this may appear, we are not called upon by any of the exigencies of this litigation to solve the supposed inconsistency of his conduct.

VIII. The Chief Justice is inclined to think that the decree of sale includes an authority to H. F. Lewis to convey, and that if a sale and conveyance had been made in pursuance of that decree, a title would have passed without confirmation by the court, but thinks the power to sell bestowed by it, was a naked power, not attached to the office of trustee created by the original decree, but to be exercised by Lewis as the representative or officer of the court making a judicial sale. He therefore thinks that the sale by Lewis and Scott, which was not made under the power, can have no effect to convey the title, the conveyance of which the decree contemplated, and he refers to the principle settled in the case of *Price v. The Methodist Annual Conference*, in manuscript, at last term. I fully concur in the correctness of the application of the doctrine asserted in that case to the facts thereof.

Its application to the facts of this case, as indicated by the Chief Justice, I am not prepared to maintain or dispute. I am satisfied with the conclusion attained, upon the principles announced in the body of this opinion.

The appellant is entitled to have another trustee appointed in the stead of H. F. Lewis, deceased, and upon such appointment, to the possession of the land in controversy, and an account of the rents and profits, subject to the trusts and limitations of the decree of 1843; consequently, the decree of the chancellor must be reversed and the cause remanded.

JUDGE, J., not sitting.