[Aderholt v. Henry.]

# Aderholt *v.* Henry.

*Bill in Equity to enforce Vendor's Lien on Land.*

1. *Sale of lands under decree; setting aside.*—A sale of lands by the register is regarded as *in fieri* until it is confirmed, and is subject to be set aside for good cause shown, on the petition of any party in interest, although the purchaser has complied with the terms of sale, and has received a conveyance.

2. *Same; misconduct on part of purchaser.*—Under a bill to enforce a vendor's lien on a tract of land, part of which had been aliened by the purchaser while living, part devised by his last will, and part ordered to be sold for the payment of his debts; said last part having been sold by his executor, and bought by a person who afterwards obtained control of the decree declaring and enforcing the vendor's lien on the entire tract, under an agreement with the several parties to the suit, by which he promised to institute proper proceedings in the cause to have the court determine the order in which the several parcels should be sold under the decree, but, in violation of said agreement, directed the register to sell all the lands except the part which he had bought from the executor, and became himself the purchaser at the register's sale; *held,* that the sale should be set aside at the instance of the other parties in interest.

APPEAL from the Chancery Court of Etowah.
Heard before the Hon. S. K. McSPADDEN.

A. E. GOODHUE, for the appellant.

WM. H. DENSON, and WATTS & SON, *contra.*

CLOPTON, J.—The bill was filed September 2, 1879, by O. W. Ward, against the heirs and devisees of J. W. Maddox, the vendee, to enforce a vendor's lien. Ward having died during the pendency of the suit, it was revived in the names of Sibert, as his administrator, and of Mrs. Ward, to whom the note was transferred *pendente lite;* and a decree was rendered, November 14, 1883, ordering a sale of the lands mentioned in the bill. Under this decree, the register only sold a portion of the lands, excluding from sale that portion which for convenience may be designated "the Mill tract;" and the appellee, Henry, became the purchaser. The appellants applied by petition to the Chancery Court to vacate the sale, and objected to its confirmation. The appeal is taken from the decree dismissing the petition and confirming the sale.

Notwithstanding the statute directs that the register must execute a deed to purchaser upon compliance with the terms of sale, and he is considered the purchaser from that time, so far as to place the property at his risk, and to prevent his repudiation of the purchase for anything afterwards occurring, the sale is regarded as *in fieri* until confirmed. While the cause is pending, it is under the control of the court, which has power, in the exercise of a sound discretion, having regard to the rights and interests of the parties, to vacate or confirm a sale made under its own decree, as well after as before a conveyance is made. The purchaser becomes a *quasi* party to the cause in which the decree is rendered, subject to such orders as the court may make, and may move for confirmation, or resist an application by any party to have the sale set aside.—*Jones v. Burden*, 20 Ala. 382 ; *Haralson v. George*, 56 Ala. 295. If the sale has been made in pursuance of the decree, and the purchaser has complied with the terms, and its fairness and regularity are not questioned, ordinarily confirmation follows. But, when there is some impropriety or irregularity attending the sale, affecting its fairness, or surprise or misapprehension caused by the conduct of the purchaser, or misconduct on his part, or on the part of any person connected therewith ; or when the sale is conducted in violation of the decree, or in disregard of the rights and interests of some of the parties ; or, when from any cause, it would be inequitable to permit it to stand, it becomes the duty of the court, on settled principles, to vacate the sale, though a conveyance may have been made, upon proper application, before confirmation, in the suit in which the sale was made. In such case, a petition to vacate the sale, by a party in interest, is an appropriate proceeding by a proper party.—*Sayre v. Elyton Land Co.*, 73 Ala. 101 ; *National Bank v. Sprague*, 21 N. J. Eq. 458; *King v. Platt*, 37 N. Y. 155.

To a full and correct understanding of the antagonistic interests of the parties, it should be stated, that Maddox, the vendee, conveyed in his life-time parcels of the lands to some of the appellants, and by his will devised other parts to some of them, and directed that " the Mill tract " be sold for the payment of his debts. Under the power in the will, the executrix sold " the Mill tract," and the purchasers having failed to pay the purchase-money, she filed a bill, September 22, 1879, after the bill in this case was filed, to subject the land to its payment. A decree of sale was made in October, 1880, under which "the Mill tract" was sold, and Henry became the purchaser. In August,

1884, after he had bought "the Mill tract," and the sale had been confirmed, Henry purchased from the complainants the decree under which the sale, which petitioners seek to set aside, was made. The transfer of the decree was obtained by an agreement, to which appellants were parties, by which he stipulated that there should be no sale before the next ensuing term of the Chancery Court, and that before that time he would commence proceedings in the suit to have determined by the court which parcel of the land should be first sold, and the order in which the other parcels should be sold; and that the defendants in the suit might file counter petitions, or answers, setting up their rights in the premises, and evidence might be taken, so that the court should determine all the equities between the defendants and Henry, and between the defendants themselves.

By reason of the successive conveyance and sales of different parcels to different persons, a question arose in respect to the order in which the several parcels should be sold, to satisfy the lien of the vendor, which extended to all the lands. The necessity and value of this provision of the agreement become apparent, when it is observed that, on the former appeal, it was held, that the equity relating to the order in which the different parcels should be sold not having been claimed and asserted, it was not obligatory upon the court to mould its decree so as to enforce it; and the facts on which it rested not having been put in issue, that the court would not notice it, nor make it the basis of a decree.—*Prickett v. Sibert*, 75 Ala. 315. The agreement was evidently intended to remedy the omission to have the equities between the defendants settled when the decree of sale was rendered, and to prevent Henry, who was the purchaser of the "Mill tract," and was procuring a transfer of the decree, from controlling it to the injury of the claimants of other parcels, without first having the equities decided. He failed to institute the proceedings agreed on, and, instead of doing so, moved for and obtained, at the May term, 1885, an order in general terms, that the register execute the decree of sale. The position, that the agreement is without consideration, and not binding on Henry, as to the petitioners, is untenable. The stipulation to commence the proceedings was part of the contract of purchase, under which he obtained the transfer and control of the decree. Its assignment was the consideration, which was deemed of benefit; and though the consideration may have moved from complainants, the stipulation was for the benefit of

[Aderholt v. Henry.]

petitioners and the other defendants in the suit.—*Coleman v. Hodges*, 77 Ala. 217.

The legal effect of the decree is to direct a sale of the lands mentioned in the bill in mass, having no reference to the order of alienation of the different parcels. From the report of the register we understand that he advertised the sale in the manner directed by the decree, but sold all the lands in one lot, except the "Mill tract," which was not sold. If a register, in the absence of instructions, sells a part of the property, because he reasonably supposes such portion will satisfy the decree ; or, if he sells in different lots, the property being divisible, for the reason that the property will command a higher price, and no injury results to either party, the court may, and ordinarily would, confirm and complete the sale. But, when there are conflicting equities, which the court has failed or declined to determine because not claimed and asserted, the register acts in violation of the decree, goes beyond his province, and invades the province of the court, if he undertakes to determine that a portion, and what portion, of the property shall be first sold, unless by consent of the parties in interest. To sanction such course, however honestly mistaken as to his powers the register may have been, would open the door to great abuse and oppression.

But it appears, further, that the register did not act at his own instance, and on his own judgment. He made the sale as he did by request and direction of Henry, without the consent of the petitioners. It is insisted, that, as he is the transferree of the decree, and entitled to the lien on the whole lands, he had a right to have all the lands sold, or only the parts which he had not bought, as he might deem proper, the petitioners not having applied to the court to obtain directions. The assertion of such right, under the circumstances of this case, is to visit on petitioners his own violation of his agreement. He stipulated to commence the proceedings to settle the equities, on which petitioners had a right to rely. He, notwithstanding, subsequently obtained the order to execute the decree, without modification, or special directions. *Laches* in failing to claim and assert the equity before the decree of sale applies to him as much as to the petitioners, he being a purchaser *pendente lite*, and bound by the decree. Neither is estopped from avoiding the sale on the ground of any subsequent incapacity, impropriety, or misconduct affecting its fairness and justness. In the absence of such agreement, the transferree would net have the authority to direct the conduct of the sale. The petitioners had equal right to be consulted ; and if the

[Ivie v. Stringfellow's Adm'r.]

.parties can not agree, the register ought to follow the terms of the decree, or postpone the sale, by consent, to receive instructions.—*King v. Platt*, 37 N. J. Eq. 155.

Henry, at the time of the sale, occupied a dual relation—purchaser of the "Mill tract," and transferree of the decree. Having control of the decree, he directed the sale so as to exonerate the parcel which he had bought, and subject to the payment of the decree and discharge of the lien other parcels, which the vendee had previously sold and conveyed; which was in violation of the rule, that in such case the inverse order of alienation will be pursued. To prevent this result was the manifest purpose of the agreement. Occupying the dual relation, and the advantageous position of transferree, it behooved him to enforce the lien with a just regard for the rights and equities of others. The sale was made in violation of the agreement; and by such violation, the purchaser has acquired title to petitioner's property at a sale made under a decree of a court of equity. If made under a mistaken opinion of his rights, and of the rights of others, it is none the less injurious, and the advantage gained none the less undue. It is obvious that it would be inequitable to permit the sale to stand; that justice will be subserved by setting it aside, and the purchaser, being the transferree of the decree, will not be injured.—*Mut. Life Ins. Co. v. Goodard*, 33 N. J. Eq. 482; *Collier v. Whipple*, 13 Wend. 224.

Decree reversed, and ordered that the sale be set aside.