Judge Ewing
delivered'the following Opinion of the Court, in-this case, near the close of the last term — June 11th. Bat the counsel of the defendants in error immediately asked for a suspension of the decision, to afford him an opportunity to present suggestions in writing, in opposition to those parts of the opinion and mandate, by which the order of the Circuit Court is reversed, and the defendants required to pay costs and expenses, as the condition upon which their motion to quash the sale, of' the estate — the subject of controversy, might he. granted. The Chief Justice intimated, in reply, that he had serious doubts whether there, were any sufficient grounds for setting aside the sale. The plaintiff Dana said, that he could not then state, that he should feel himself at liberty to ask- the Court to bestow any more labor upon this case, but would assent to the suspension, and concur in soliciting it, that he might have time to examine the opinion just delivered, deliberately, and, in case he should deem its principles untenable, present his views in a petition for a re-hearing. The suspension was accordingly .ordered, until the loth day of the then next term. Nothing further, however, was ever offered on the part of the defendants. Butin due time, the petition for a re-hearing was presented — by which the decision was further suspended until this morning — when the Chief Justice again mentioned the case, remarking that it was one which had occupied much-of the attention of the Judges, who had experienced serious difficulty in coming to a conclusion satisfactory to the whole Court — but that a majority had finally determined to adhere to the Opinion formerly delivered. The petition was therefore overruled.
The Franklin Circuit Court, at July Term, 1832, renclered a decree upon a bill to foreclose a mortgage, in favor of Forman, the mortgagee, against the administrator and heirs of Samuel Throckmorton, and Hunt and Ross, tenants in possession, who derived title under a subsequent sale made by Throckmorton — barring them of all equity of redemption in and to the mortgage prem-. ises — a piece, of land known as the Cedar Cove Mill *615 tract. And it was farther ordered and decreed, in substance, that said .mortgage premises, or so much thereof as might be necessary for the purpose, should be sold, to satisfy said mortgage debt, interest and costs, (amounting to about nine hundred dollars;) the sale to be made a't public auction, in the same manner as to tíme and place and advertisements, which is directed by law in case of sales under execution, upon a credit of three months; the purchase money to be secured by bond, with one or more good securities, to have the force of a replevin bond; and Joseph Clark, then acting sheriff of the county, was appointed a commissioner to carry the decree into effect, and to make report to the next October Term of said Court.
The said property was- advertised, and sold on the 20th day of August, 1832 — it being a court day, and one Thomas Piper became the purchaser at five hundred dollars; who afterwards exhibited himself to the commissioner, as the agent in said purchase, of Dana, the attorney in said case, for said Forman. No bond was tdken from the purchaser, or acquittance or receipt, or any other step taken, till the October court; to which court, the said commissioner made an informal and ambiguous report, setting forth that Piper, agent for Dana, attorney for the complainant, was the purchaser, and giving as the reason for taking no bond, that the complainant was the purchaser.
At said term, the Court, on the esparte motion of the defendants, quashed said report, and sale, and refused permission to the commissioner to amend his report, though he then asked leave to do so.
The complainants took an appeal from said order of the Circuit Court, to this Court; and the said order was reversed, and sent back to the Circuit Court, with the following mandate: — “The order quashing the report “ and sale, and ordering a re-sale, must be reversed, “ with costs, and the case remanded, with directions to permit the commissioner to amend his report, and al- “ low the complainant to show cause against quashing w it.”
the trial of tho motion in the coart below. Recital of evidan^ú núni'rl nn
Upon the return of the case to the Circuit Court, the commissioner refused to correct his report, stating that the report was made as he understood the sale.
Upon this state of case, the parties being now before the Circuit Court, a motion was made to quash said report' and sale, and direct a re-sale; and proof being heard on both sides, said report and sale was again quashed, and a re-sale directed.
From this decision of the Court, said Forman and Dana have appealed to this Court.
It is shown by the evidence, now spread, on the record, that one Snell, who was a mesne warrantor to the tenants in possession, had written to Blanton, a friend, 1 J ' and enclosed him a letter of attorney, manifesting great interest in regard to said sale, and requesting and authorizing him to get a copy of the record, and obtain a supersedeas, if there was time to do so; if not, to purchase the property, or take any other steps that would protect the said Snell’s interest — he having sold and warranted one half of said mills to Hanna. That said letter was received between the 14th and 20th of August, 1832; and that on the day of sale, said Snell arrived in town and attended said sale himself, together with said Blanton; that on the day of the sale, but before it took place, said Blanton and one Macey.were called on, and did value said premises, under the law for the redemption of property sold under execution; that said valuation was made, and the property sold, as he (Blanton) understood, and as he believes was understood by those present, subject to’redemption, as property sold under execution; and that he (Blanton) knows and believes, that said Snell would have purchased the property, but for the advice of his friends at the time; that he was advised by said Blanton, one of the valuers, not to bid for said property, but let it be sold for as small amount as it would bring — the smaller the amount, the better for him, if he should find it necessary to redeem the property; that Snell made no bid, in consequence of this advice and opinion; that the commissioner was urged by Snell to postpone the sale, in consequence of the want of sufficient notice, the ill health of Snell, and *617 the absence of planna, who was interested, and principal owner of said mills, said Hanna being absent before notice, as the witness believes; and said commissioner refused to postpone the sale, alleging, as witness recollects, as a reason, that no injury would accrue to those interested, as they would have a right to redeem.
The commissioner,s report_am. higuous, irregnlar and erroneous.
Question — whether, when property is ordered to he sold by a commissioner, to satisfy a decree in chancery, the attorney who obtained the decree can become the purchaser; and an argument against the validity of such purchases But doubts suggested, •whether the defendants in the decree in such case, can take advantage of such irregularity (if it be irregular,) and this case being made to turn upon another point, — the question is waived. '
It was also proven that said property did not sell for more than one eighth or tenth of its value.
It was also made appear clearly, by the evidence of the defendant Dana, that he was the purchaser, in his own name, by his agent Piper; and that he, said Piper, or Forman, had nothing to do with said valuation, or the appointment of commissioners to value; but the same was caused to be done by said commissioner, under a mistaken construction of the decree, that the sale should be made subject to redemption, in analogy to sales made under execution.
The commissioner m this case, has, no doubt, been guiltv, unintentional, it is believed, of great irregularity r , , . , n- . , i i ° „ , J m the steps taken to carry into effect the decree of the Court, and his report is uncertain and ambiguous.
The commissioner evidently believed, that Forman, the complainant, was the purchaser, through the instrumentality of Dana,his attorney; and so intended to express himself, in his report. But it turns out by the proof, that Dana was the bidder, by his agent Piper, and intended to become the purchaser in his own name; and upon the return of the cause to the lower court, executed and delivered to the commissioner an acquittance, as the attorney of Forman, for the five hundred dollars bid, and demanded a deed.
Dana being made the purchaser, who was the counsel .of Forman, it is objected that tbe sale is void, and should be quashed on that ground.
Cases are not wanting in the books, in which, able chancellors have determined, or at least expressed their decided opinions, against the propriety of the attorney *618 or counsellor of plaintiff, or complainant, in a cause, becoming the purchaser of property, in his own name and for his own benefit, sold under execution or decree, of which'he has the management and control. Chancellor Kent, in the case of Howell vs. Baker, 4 John. Chy. Reports, 120, makes a question of the validity of such purchases, and strongly reprobates the practice. He refers to several authorities in the English courts, where purchases made by counsel entrusted with the ■management of a cause, have been held invalid, and the ■counsel made a trustee for the benefit of the parties.
And it is to be remarked, that, in the case in which the 'above opinion is expressed by Chancellor Kent, the defendant in an execution, and Whose property had been purchased by the counsel ,of the plaintiff, was seeking ■in a Court of Chancery, to invalidate said sale. .
Our predecessors intimated strongly, the same opinion. Blight's Heirs vs. Tobin, 6 Monroe, 616.
It is certainly a dangerous temptation, to allow per■sons so deeply concerned fin the control and management of the sale, the liberty of becoming purchasers in their own name. He who is entrusted with the business of •others, ought not tobe permitted [to] make that business • a profit to themselves. 'It tends to fraud and corruption; and frail man should not be led into temptation.
It is upon this principle, that -our statute has prohibited ■sheriffs from purchasing property sold under execution; ■ and upon this principle, that trustees are'prohibited from buying property which they have the management and ¡■sale of.
In Hall vs. Hallet, 1 Cox, 1834, Lord Thurlow observed, that “no attorney can be permitted to buy in things in a course of litigation, of which litigation he has the management. This, the policy of justice will not endure."
But doubting whether the defendants in the decree ought to complain, or be permitted to take advantage of the sale on that ground, and not deeming it necessary ■to decide this question in this cause, we will proceed to the other points involved, which we deem sufficient to sustain the order of the Circuit Court, setting aside said sale.
In England, the practice is to open the biddings at sales by a master in chancery, upon an offer of ten percent.advance, & a deposit of the money; " and this practice has been sanctioned; in New York," but never in Kentucky; and its is much to be thisbt case^tho-parties on whose was^qualbed8,— havingoíferednonot nwitMn'Vthorule. — But inadalways °indPnce9. theChancellor toear to sach apP1»»1»011*1
The practise has long prevailed in the English courts, ©f opening the biddings, in sales made under the decrees of their chancellors, at the instance, and upon the motion of the complainant or those interested in the estate, or even on the motion of others not concerned in the cause. And no other reason is necessary to be alleged, at any time before the report is confirmed, than an offer generally, of ten per cent, or more, advance upon the for-, mer bid, and a deposit of the amount in court. 2 Maddock's Chy. 500 &c. and the authorities there referred to; 1 Vesey Jun. 553; 4 Vesey, 700; 6 Vesey, 466, 513; 7 Vesey, 420; 8 Vesey, 214; 14 Vesey, 151. And this practice has been sanctioned'in New York. 3 Johnson's Chy. ** Reports, Lansing vs. McPherson and others, 424.
It is true, that the practice of opening biddings upon the mere offer of an advance upon the price, has never been sanctioned by any adjudged case recollected by this Court, in this state. And it is questionable whether the practice will or ought to be extended to the same length that it has been indulged in England» It is certainly to be questioned, whether the practice,, as there indulged, does not do more harm than good. Lord Eldon remarks in the case of White vs. Wilson, 14 Vesey, 151, that it is questionable, whether the practice of opening biddings there, be not productive of more harm than good; half the estates that are sold in courts, are sold upon the speculation, that there- will be an opportunity of purchasing afterwards by opening the biddings. 3 Johnson's Chy. Rep. 292.
But these authorities are not cited with a view to give the sanction of this Court,.,to the practice as it has been indulged in in the English courts; but by way of showing the facility with which all Chancellors have lent a willing ear to all applications made to set aside sales when a great sacrifice has been made of property ’ sold under the decrees of their courts, and when evident benefit will result to the estate by directing a re-sale.
For if we should feel disposed to extend the doctrine-of the English chancellors to this State, this is not a case where the defendants in the decree have brought themselves within the rule of,their practice, which re *620 quires the offer of ah advance üpon the sale and a cteposit of the advance, and expense of sale, in Court, on making the motion.
Case in N. Y., of a sale set aside— without any offer of an advance — uponthe ground of surprise to the defendant, as to. the tiitie place-of sale, and'inadequacy of price..
A commissioner-(the sheriff) appointed to carry into effect a decree for the sale of a mortgaged estate, conceived: Shat the estate would be subject to redemption, likelandsold under ex’on; and, with that view, selected two valuers, and had the estate valued; though this was done before, not at the time of, the sale, it- was known to one at least of the persons who attended the sale; and a great depression of the price-for which the estate sold, is presumed to have resulted from it;but neither thecotnp’t in the-suit, nor his attorney, nor the purchaser, participated in, or had any knowledge of it, until after sale: yet held, that, for this cause, the sale may be set aside, upon certain conditions : see next page.
*620 In the cáse of Williamson vs. Dale and others, 3 Johnson’s, Chy. Rep. 292, the Court, without any offer of an advance upon the sale, set the sale aside* and directed a re-sale of the property, upon no other ground than surprise on the defendants*, as to the time and place or sale, (though the property hád been regularly advertised for sale,) and inadequacy of price. The surprise* it isr true, had been produced by some loose conversation between the complainant and his counsel, and the agent of the defendants, bu,t without any culpable or intentional misconduct on either of their parts. But the surprise seems to have arisen, more from the laches of the defendants themselves, than from any censurable misconduct on the- part of the complainant, or his counsel. •
In the case before the Court, it is evident, that a general misapprehension existed among the bidders, that the sale was made, subject to redemption. That misapprehension was produced by the act of the commissioner, in procuring the property to be valued, as well as by his declarations, to one at least of the by-standers, that it was sold subject to redemption.
He, it seems, had been' an old sheriff, and had been intrusted by the Court to carry into execution its decree, and would be presumed by the by-standers, to' be well acquainted with the duties to be performed by him; and all would, and did, no doubt, confide in him; and confiding in him, were necessarily brought to the conclusion, that the property was sold subject to redemption; by which competition in bidding was evidently discouraged, and the estate sacrificed at one eighth or tenth of its value. Indeed, this is the more evident, in this case, from the consideration, that Snell, who was deeply interested in buying in the property, to secure some of the defendants to whom he had sold, was present, and intended to bid, and would, no doubt, have bid the full amount of the complainant’s demand, as the best and only means of indemnifying himself, had he not been informed by the commissioner, by his acts at *621 least, if not by his declarations* as well as by the advice of his friends, who were laboring under the same delusion, that said property was subject to redemption; and the lower it sold, the better for him, as he could the better secure himself by redeeming it. He certainly was driven from the arena of bidders, by this false delusion, produced by the act of the Chancellor’s commissioner; and a great depression in price of the property sold, thereby produced. Is it possible; that the Chancellor will sit by, and see this irreparable injury produced to the parties litigant in his court, brought about by the ministerial agent selected by himself to carry into execution his decree, and has no power to correct it? We cannot sanction such doctrine. The authorities to the contrary are abundant.
Sales under execution cannot be set aside for inadequacy off any irregularity, j¡J„*hetbat°Chapr pened without ^participation* of the purchaser )arit), the reme<ty is tty suit. upon the shefiff’s bond. The; ^ tj,se^°¡ff deed (without any action of the court upon it,) passes the title, commisfiónwuip pointed hy the « decree, is a riai^ervmt^or “gent,” whose proceedings are subject to the revision and correction of the court, and whose sale is not valid, until sanctioned by the court; that the estate is struck off, subject to this revising power and control, and the best bidder’s right to be considered a purchaser depends upon and awaits the sanction and confirmation of the court — which should be withheld whenever manifest injury has been done by hny act of the commissionev — though the. best bidder may be made to lose an advantageous speculation.
An attempt is made to sustain this sale, on the analo- . , . i , ... . gies which are urged as existing between it, and sales under execution. And an array of authorities is exhibited to establish the proposition, repeatedly settled by this Court, that inadequacy of price, or irregularity in the officer making the sale, are not sufficient grounds to set aside a sale made under execution, where such irregularity has taken place without the concurrence or participation of the purchaser.
We perceive a striking want of analogy between the ^ 1 tWO Cases.
Sales under execution are made by an officer of the law, who is required by law, as well for the benefit of plaintiffs and defendants, as others who may be injured ‡ . 7 J J by his official defalcations, to give bond and good secarity for the faithful discharge of his duties. If any person is injured by his irregular acts, in selling property, in which the purchaser has not participated, ample remedy is afforded him, by suit upon the sheriff’s bond. The law is the only guide to the sheriff', and his sales are perfect and complete, and the title passes to the *622 purchaser without the sanction or confirmation of at Court.
conditions on which the sale may be set aside (ante, 621) the conduct of the complainant and of the purchaser being unexceptionable: to wit, that the defendants, plaintiffs in the motion., pay to the purChns6r his costs- and expenses in-cut-red,m making the purchase, Sr in resisting the motion to set it aside, to be assessed upon the nlíowld between lawyer and di-' complainant, iñ's costs incurred by the sale, and to both, their joint costs in this court-
*622 A commissioner appointed by the Chancellor to sell, is ^ie Mere ministerial servant and agent of the Chan-cell or; has no other guide than the instructions contained in the decree; in this state, gives no bond or security;, is required to make a report to- the court, of his actings- and doings, and a sale made by him is never valid, until it is sanctioned by the Chancellor. All his acts are under the supervision of the Chancellor, whose ministerial, agent he is, and if any injustice has been done by his. ignorance, or misapprehension of his duty, it will be-corrected by the Chancellor.
Those who purchase at a Chancellor’s sale, purchase-subject to this revising power and control, exercised by-the Chancellor over the- sale; and their right to the purchase, depends upon and awaits his sanction and confirmation. The Chancellor should surely withhold his. sanction from a sale of property directed, by his order - to be sold, when such manifest injury has. been done to-both complainant and defendants by the delusion preduced by the commissioner, though the purchaser maybe made. to. lose an advantageous speculation.
But a Chancellor delights in doing justice to all persons concerned; and to attain that end, this' Court has-no hesitation in setting aside the said sale.
But that should have been done, by the Circuit Court,, upon terms that would have done the least injury to the; purchaser and complainant. They were guilty of no-fault. They had no knowledge or participation in the; valuation of the property, or in the production of the misapprehension which existed among the bidders. In- "** ^ deed, the purchaser in this case, seems to. have acted perfect fairness, and a sincere desire to promote 1 . 1 . the best interest of the client. Under these circumgonces, pe should have been allowed his costs, and all- ’ _ 5 reasonable expenses incurred in the purchase, to be assessec^ uPon the liberal terms allowed between client and lawyer. And the complainant should also have been, aH°wecl his costs incurred by the sale. 3 Johnson's Chy« Reports, 292. ' '
*623 "For the failure of the Circuit Court, in making these ¡allowances, the order of the Circuit Court is reversed.
It is therefore considered that this cause be remanded to the Circuit Court, with directions to said Court, to quash said report and set aside said sale, on condition, that the defendants in said chancery suit, plaintiffs in said motion, pay to said Dana, within reasonable time, to be fixed by the Court, his costs and expenses attending said purchase, including his costs of said motion, to be ascertained by the Court, upon the principle of an allowance of costs and expenses between client and lawyer. And also on condition, that he pay to the complainant the costs and expenses of the former notice and sale, ■and that the appellees pay to the appellants their costs an this Court expended.