CHANCERY.         **Dale vs Shirley.**

Case 106.      APPEAL FROM THE BARREN CIRCUIT.

*Commissioners' sales.    Opening biddings.    Practice in Chancery.*

June 27.     JUDGE MARSHALL delivered the opinion of the Court.

The case stated.     JEFFRIES, as the beneficial owner of sundry small judgments against P. N. Thomas and others, on which executions had been returned "no property found," filed his bill to subject to these demands, 200 acres of land which Thomas had mortgaged to Shirley for a debt of about $113, and making Shirley a party, prayed that he might proceed upon his mortgage, and that so much of the land as remained after satisfying Shirley, might be subjected to his demands. Shirley, by cross bill, set up his mortgage and debt, and prayed for a sale, &c. A decree was subsequently rendered upon the cross bill alone, for the sale of the land to satisfy Shirley's debt, and Shirley having become the purchaser at the sale, for about $137, the amount of his debt, interest, and costs, Dale, upon the return of the Commissioners report, objected to its confirmation, and moved to set aside the sale and to have a re-sale, offering to pay the amount of Shirley's decree, with ten per centum thereon, or to pay Shirley's debt for one half of the land. He farther showed, by his affidavit, in support of his motion, that during the pendency of the suit, an execution for about $170 had issued against Thomas and himself as his surety, under which he had purchased the equity of redemption in this land, and that having paid the residue of the execution, he had taken a mortgage on the same land from Thomas, who was otherwise insolvent; that to save himself, he had also acquired the interest of Jeffries in the suit; that his interest being thus deeply involved in the sale of the land, which furnished the only means of reimbursement, he had intended to attend it and bid for his safety, and was in the town of Glasgow where the sale was to be made,

on the appointed day; but that before the sale he was told by Shirley that he intended to postpone it until the next County Court day, there being a prospect that Thomas would sell the land and pay off his debts by indulgence; that in consequence of this communication, he paid no further attention to the sale, was not at the Court House door when it was made, and did not know of it until it was over. Shirley having been sworn, stated that he never did, directly or indirectly, promise Dale to postpone the sale to a subsequent term, or held out to him any offer, promise, or statement, to make him believe that *the* land would not be sold on that day. Dale had not alledged any offer or promise, and Shirley does not deny that he had conversed with Dale on the subject of the sale before it took place, and that something was said in that conversation, about a postponement. Dale of course, states his impression produced by Shirley's communication to him; and we understand Shirley as denying that he made any statement for the purpose of inducing a belief that the sale would be postponed, or which was sufficient to induce that belief. As he neither denies that there was a conversation on the subject, nor states what it was, the effect of his statement is, in the first place, to deny any purpose of deception, and then to express his judgment that Dale could not or ought not to have been deceived by what was said. But conceding that he did not intend to deceive, and that what he said ought not, in his opinion, to have produced the impression that the sale was to be postponed, still it may have been of such a nature as to produce that impression, though not so intended or understood by him; and as, unless Dale is forsworn, that impression must have been produced on his mind, as he was deeply interested in the sale and anxious to attend it as the only means of saving himself from loss, as he was in the town for that purpose, and says his attention was withdrawn from it by the communication made by Shirley, we think the fair conclusion from these considerations, and from other corroborating circumstances, is, that he was in fact, misled by what Shirley said in relation to postponing the sale, and certainly we cannot determine that what Shirley said was

not fairly susceptible of the construction which Dale placed upon it; it is entirely consistent with Shirley's statement on oath, to suppose that he spoke of postponing the sale, intending to refer to another hour of the same day, and that Dale understood him to refer to a future day.

We take the fact then to be, that a party deeply interested, was misled with regard to the time of the sale, and prevented from attending it, by reason of an impression taken up from the conversation of the mortgagee, who purchased. And conceding that this impression was not intended to be produced, the question is, whether the mortgagee, who by reason of this mistake, has under a decretal sale, purchased a tract of land for about one sixth of its value, should, in a Court of Equity, and upon objection to the sale, made in due time, with an offer of a large advance upon his bid, be permitted thus to engross the debtor's whole property, greatly exceeding the value of his debt, and to throw an entire loss upon that creditor, who has been deceived by his conduct.

This Court has in several cases maintained the doctrine, that in sales by Commissioner under a decree, the accepted bidder has no independent right to have his purchase confirmed, but that the confirmation of the sale, depends upon the sound equitable discretion of the Chancellor, by whom, through the Commissioner, as his agent, it is made, *Busey* vs *Hardin,* (2 *B. Monroe,* 411;) *Forman, &c.* vs *Hunt,* (3 *Dana,* 614,) *&c.* Chancellor Hanson, of Maryland, is reported to have said, that "reasons which would induce him as proprietor or trustee, to set aside a sale made by his agent, should determine him as Chancellor to refuse his approbation to a sale made by a trustee," (2 *Harris, and Gill,* 355,) that is, by the Court's Commissioner. And in *Anderson* vs *Foulke,* (2 *Harris and Gill,* 257,) Chancellor Blanding, in stating the practice in the State of Maryland, says if there should be made to appear, either before or after the sale has been ratified, any injurious mistake, misrepresentation or fraud, the biddings will be opened.

*The Chancellor has and does exercise a supervisionary power over the sales made by Commissioners under his decrees, confirming or setting them aside as may be right and just.*

In New York, where the practice in selling under decrees for foreclosure and sale of mortgaged property, is substantially the same as in this State, and the question

*The practice in New York, &c.*

of setting aside such a sale, depends on the same principles, it has been repeatedly decided, that surprise or mistake, produced by the conduct of the purchaser, or of the Commissioner or others interested, whereby the estate has been sacrificed, to the injury of the mortgagor, or those standing in his place, or of others interested, is a sufficient ground for refusing to confirm the sale, and for ordering a re-sale, although there has been no fraud nor improper intention, and though the sale was conducted fairly, provided the motion for a re-sale is accompanied with the offer of a proper advance upon the bid, the amount of which seems to have varied in different cases, *Dale* vs *Williamson*, (3 *Johnson's Chy. Rep.* 290 ;) *McPherson* vs *Lansing*, (*Ibid*, 424;) *Collins* vs *Whipple*, (13 *Wendell*, 224;) *Tripp* vs *Cook*, (26 *Ibid*, 143.)

In the case of *Greele* vs *Emory*, referred to in Barbour's Chancery Practice, vol. 1, page 539, the party objecting to the sale which had been made at a great sacrifice, had been unintentionally misled with regard to the time of the sale by the solicitor of the complainant, who was the purchaser. And in *Wharton* vs *Thatcher*, referred to in the same place, the property was purchased by the complainant at a great sacrifice, in consequence of the horse of the defendant's agent, who was sent to bid for it, having given out, from the heat of the day. And in both cases a re-sale is said to have been ordered.

In *Dale* vs *Williamson*, the executor of the mortgagee had been innocently misled as to the time of the sale, and the purchase seems to have been made by a stranger. In *McPherson* vs *Lansing*, the objector seems to have recently discovered that he was liable to a decree for the deficiency of the mortgage sale, and on this ground, and his offer of a large advance, a re-sale was ordered, the mortgagee having been the purchaser. In *Collier* vs *Whipple*, the mortgagee or his solicitor, having been the purchaser, a re-sale was ordered, because judgment creditors were prevented from attending the sale, in consequence of an impression received from the master, (tho' without fraud on his part,) that the sale would not take place on the day, &c. And in *Tripp* vs *Cook*, the party standing in the place of the mortgagor, as having assign-

DALE
vs
SHIRLEY.

ed the mortgage debt, and guarantied payment, having taken the impression, from conversations with the mortgagee or his agent, that there would be no foreclosure and sale, the sale was set aside on his motion, on the ground of surprise, the mortgagee having purchased at a sacrifice.

In the most of these cases, the sale was set aside, on the ground of surprise or mistake, innocently induced by the conduct of some one concerned in conducting or controlling the proceeding, whereby an interested party was prevented from attending the sale. And although the general principle of policy which requires that judicial sales fairly made shall be sustained, is acknowledged and regarded, it is evident that the Courts have been disposed, and especially where the mortgagee is himself the purchaser, to require that all parties interested should have a fair opportunity of being present at the sale, and to regard slight circumstances in the mortgagee's conduct, or that of his agents, tending to produce a mistaken impression as to the time of the sale, and thus to deprive them of the opportunity of attending it, as sufficient, when taken in connection with great inadequacy of price, to authorize a re-sale upon equitable terms.

Upon the principle and authority of these cases, we are of opinion, that the Chancellor should not have approved the Commissioner's report, but should have rejected it, and set aside the sale, upon Dale's tender of the amount of Shirley's debt, with ten per centum thereon. And as upon the payment of the debt of Shirley, there will be no necessity for an immediate re-sale, and as Dale having a junior mortgage, is entitled to redeem the first mortgage, it will be equitable and proper, upon his paying into Court, for Shirley, the amount of Shirley's bid, with interest, and the ten per centum on the bid, which in this case will be a reasonable allowance for trouble and extraordinary costs of Shirley, that he should have the benefit of Shirley's mortgage and decree, to be under his control, and to be enforced separately or together with other equities to which Dale is entitled, upon proper proceedings, to be instituted for litigating his right to do so, with all parties concerned.

Surprise or mistake, though innocently induced by the conduct of some one concerned, in the sale of property as to the time of the sale, whereby one who designed to bid was prevented, has been held good ground by the Chancellor to order a re-sale.

A creditor and junior mortgagee of estate sold under decree of foreclosure and order of sale, desired to bid and was prevented from being present at the sale through the agency of the compl't who became the purchaser, at about one-sixth of the value of the land sold, and offering an advance of 10 per cent. and interest upon the sum bid—Held that the sale should be set aside and a re-sale ordered by the Chancellor.

Wherefore, the decree overruling Dale's motion, and confirming the report and sale, is reversed, and the cause is remanded, with directions to quash said report and sale, upon the terms above mentioned, and for further proceedings.

_B. & A. Monroe_ for appellant.