## Staunton.

TERRY v. COLES' EX'OR AND ALS.

SEPTEMBER 24TH, 1885.

1. JUDICIAL SALES—*Definition—Case at bar.*—Sale made by order of a court of competent jurisdiction, *pendente lite*, is a judicial sale. An executor having authority under the will to sell land, declines to exercise his authority, but applies to the court for instructions and directions, and is ordered to make sale and report it to the court for confirmation; whereupon, he makes and reports the sale to the court as ordered, such sale is a judicial sale.

2. IDEM—*Bidders—Confirmation.*—Bidder acquires no rights until his bid is accepted and the sale confirmed by the court. Whether the sale will be confirmed depends on the circumstances of each case and the sound discretion of the court in view of fairness, prudence and the rights of all concerned. No general rules will apply to all the cases. *Brock* v. *Rice*, 27 Gratt. 812.

3. IDEM—*Rejection of Bid—Case at bar.*—Where sale of land is decreed to pay specific legacies, and the residue to four residuary legatees, and the land is bid in by one of those legatees, and the other legatees oppose the acceptance of the bid and the confirmation of the sale, and show by numerous witnesses well acquainted with the land, that though the sale was open and fair, yet the price bid was grossly inadequate, and that the land if divided and sold in parcels would, on the usual terms of payment in such cases, bring two or three times the price bid; there was no error in the court rejecting the bid, and refusing to confirm the sale and directing a re-sale.

Argued at Wytheville, but decided at Staunton.

Appeal from decree of circuit court of Roanoke county, rendered October 9th, 1884, in the chancery cause wherein Robert

McClellan, executor of Elizabeth Coles, deceased, was plaintiff, and John Coles and others, the devisees and legatees of said Elizabeth Coles and others, were defendants. The object of the suit was to obtain the court's instructions and directions as to the proper mode of executing the trusts imposed on the executor by the will, and especially as to the sale of a tract of 4552 acres of land, part of the testatrix's estate. The court decreed that the executor sell the land in a certain way and on certain terms and report the sale to the court for confirmation. Executor made the sale for $6000, to J. Coles Terry, one of the four residuary legatees to whom the proceeds of the sale were going after the payment of certain specific legacies. The other residuary legatees urged the rejection of the bid of $6000. The sale was shown to be fair, but the price was proved to be grossly inadequate, numerous witnesses, who knew the land well, testifying that, if sold in suitable parcels, it would bring two or three times the price bid by J. Coles Terry. The court refused to confirm the sale, and decreed a re-sale in parcels. From this decree J. Coles Terry obtained an appeal to this court.

Opinion states the facts.

*Carrington & Fitzhugh*, for the appellant.

*Penn & Cocke* and *Staples & Logan*, for the appellees.

LACY, J., delivered the opinion of the court.

In September, 1883, the appellee, the executor of Elizabeth D. Coles, deceased, instituted a chancery suit in the circuit court of Roanoke county, setting forth the death of his testatrix on the 9th day of June of that year; the probate of her will and his qualification thereunder, and filed a copy of the will. That, among other property, the testatrix was the owner of a tract of four thousand five hundred acres of land, which consisted in large part of mountain land. That there were

*numerous small settlements* upoṇ this land *occupied by tenants.*
That he thought it might be to the interest of the estate to sell
this land privately, rather than publicly, and he desired the in-
struction of the court as to his power to do so; that there were
various trusts declared by the will, and some limitations on
some of the legacies which are obscure in their terms, citing
them as matter for the decision of the court, claiming that he
was entitled to the protection of the court in the execution of
the said will, and *to its* instruction as to his action therein. Pray-
ing that all parties in interest be made parties to the suit, and
that the will of his testatrix be construed by the court, and
especially as to the points set forth in the bill; that he might
be *instructed on all points* as to his duties as executor; and that
the estate be administered under the direction of the court,
and for other relief, etc.

After some special legacies, the will provided as to the resi-
due, that it should be equally divided among four residuary leg-
atees; Mrs. Louisa P. Withers, Miss Lizzie D. Carrington,
Mrs. Emma C. Middleton and John Coles Terry, the appellant;
and appointed Robert McClelland, the appellee, executor, with-
out bond with security.

The circuit court, by decree rendered on the 9th day of Oc-
tober, 1883, construed the will on all points, and decreed, that
the executor, by the terms of the will, was authorized to sell
the real estate publicly or privately, at his best discretion.
That he should proceed to do so, and that he should report his
proceedings to the court, and all sales made by him would be
subject to the approval of the court. That the executor settle
his transactions before one of the commissioners of the said
court, who was directed to make report to court.

The infant defendants answered by guardian *ad litem,* and the
bill was taken for confessed as to the adult defendants. On the
1st day of October, 1884, the appellee filed his report under
the decree for a sale, setting forth that by directions contained

in the will of the testatrix, and in obedience to the decree in the cause at the October term, 1883, he had on the 21st day of July, 1884, that being county-court day, after duly advertising the same, sold the tract containing four thousand five hundred acres to J. Coles Terry, one of the residuary legatees, at the price of six thousand dollars, who had paid one-fourth cash and otherwise complied with the terms of the sale. That the sale was open and fair, in the presence of a large crowd of people drawn together by court-day; that there were several bidders; that from his own judgment and the judgment of others he had thought it best to sell as a whole; that the amount realized (as he was at present advised) was more than sufficient to pay off the specific legacies, and the report was respectfully submitted to the court for its action.

The confirmation of this sale was objected to by Mrs. Louisa P. Withers, (through her counsel), who is stated in the will to be a resident of Danville, Va. The will also states that Miss Carrington and Mrs. Middleton reside in Richmond city, Va.; and that J. Coles Terry, the other residuary legatee, resides in Roanoke county, where the sale occurred, and he, as has been said, became the purchaser at the reported sale.

The objection of Mrs. Louisa P. Withers to the confirmation of the sale by the court, was upon the ground that "*the price was wholly inadequate.*" This objection to the confirmation was supported by the affidavit of John Coles, dated October 2nd, 1884, who made oath that he was well acquainted with the land, and that it was worth $2.50 per acre, or $11,250, if sold upon the usual terms of land sales in that county.

The affidavit of J. J. Huff, that he was well acquainted with the land, and if sold in parcels, and on the usual terms of land sales in that county, it was worth $4 per acre, making $18,000. This affidavit was on the same day.

The affidavit of P. H. Kefauver was that he knew the land well, and that upon the usual terms and in small tracts it was worth $4 per acre, or $18,000.

The affidavit of J. H. Overfelt, on the same day, showed that he was, and had been for eleven years, a renter of this land; knew it well, and that it was worth $4 per acre, or $18,000.

The affidavit of N. Hockman, taken on the 1st day of October, showed that he was a coterminous owner; was well acquainted with the cleared land of the tract, and that there was said to be one thousand acres cleared and· in cultivation, and that it was worth $9 per acre; that he had sold some land adjoining this, belonging to him, of about the same quality, at $10 per acre.

The affidavit of Col. Wm. B. Shelor, of October 2d, was that he was not well enough acquainted with the land to state its value, but that he believed that if divided up into small tracts it would sell for a *good deal more* than if sold as a whole.

The affidavit of Tazewell Price, of October 27, 1884, was that he was well acquainted with the land, and thought it worth $4 or $5 per acre, or $18,000 to $22,500.

The affidavit of Robert Huff, of the 2d of October, 1884, was that he knew the land well; that there were six hundred acres situted on Mill and Bottom Creeks worth *at least* $10 per acre, which is $6000, and would leave 3900 acres to be sold in small tracts; and if the land should be surveyed, and the lines run as claimed by Mr. Joseph Terry, the land would overrun the estimate by one thousand acres.

The affidavit of James E. Day, of October 1st, 1884, showed that he was well acquainted with the land, and that it is worth $4 to $5 per acre, or from $18,000 to $22,500, which opinion is based on *actual* sales in the neighborhood; that he is a surveyor, and believes the land could be conveniently divided into small tracts, and that it would sell more advantageously in that way.

And the affidavit of C. C. Miller, of October 4, 1884, that the rental value of the land is eleven hundred dollars per year, and that he bases his opinion on information derived from tenants on the land, and the actual rents paid by them, and from other sources of information in the neighborhood.

On the 25th day of October, 1883, an appraisement was made of this land, under an order of the county court of Roanoke, entered at the August term of that court, 1883, which is filed also to support the objection of Mrs. Withers; wherein it is set forth by the four commissioners, who acted under the order of the county court, that after being sworn, they had made a *personal inspection* of the land, and appraised it at $11,500.   These were the appraisers named and appointed on the motion of Robert McClelland, at the time of his qualification as executor, to appraise the personal property of the testatrix, and the real estate directed to be sold.

On the other hand, in support of the insistance of the appellant, J. Coles Terry, that the sale shall be confirmed by the court, extracts from the land-books of Roanoke county are filed, showing that this land is valued on the land-books for taxation at $4524.

The cause came on to be heard in the circuit court on the 9th day of the term, October, 1884, upon the motion to confirm the sale, and the objection of Mrs. Withers, and the affidavits and stated assessments.   Whereupon the circuit court refused to confirm the sale to J. Coles Terry, and directed the land to be again offered for sale.   The said J. Coles Terry, the appellant, then applied for an appeal, which was allowed by one of the judges of this court.   The refusal of the circuit court to confirm this sale is assigned as error by the appellant; that the sole ground of the refusal of the circuit court to confirm the sale was inadequacy of price.   The decree is assailed:

. First.  Because the sale was made by the executor under the will, and the exercise of this discretion by him was a contract between him and the purchaser.   That if he had sold without the intervention of the court, it would have been a contract which would have been specifically performed; that it is well settled that inadequacy of price alone is not of itself a sufficient ground for setting aside a contract.—Citing *Hale* v. *Wilkinson,* 21 Gratt. 82, and *White* v. *McGannon,* 29 Gratt. 515.

It is then claimed that the same general rule should prevail in judicial sales. That it is admitted that confirmation is addressed to the sound discretion of the court; but so, says the learned counsel for the appellant, is the question of specific performance of any contract, addressed to the sound discretion of the court, &c., &c.

As to the first question, whether this is a judicial sale, or a sale by the executor under authority of the will, we will remark, that while the executor was authorized to sell under the will, and was allowed to do so under the will, without giving security, he declined to do so, and indeed did not qualify as the will authorized without giving security upon his official bond, but was required to furnish security in the sum of twenty thousand dollars, with J. C. Terry and John Coles as his sureties. He came into court, and sought the aid and protection of the court on all points, declining to assume any responsibility as executor, asked the court to administer the estate, which the court proceeded to do, and directed him to offer the land for sale and make report to the court. Such a sale appears to be a judicial sale.

Mr. Bouvier defines a judicial sale to be a sale made by some competent tribunal, by an officer authorized by law for the purpose. Mr. Barton defines a judicial sale to be one which is made by a court of competent jurisdiction in a pending suit, through its authorized agent.

And this definition seems to be complete.

It must be made in a *pending suit:* says Mr. Rorer, "a judicial sale is made *pendente lite;* whereas an execution sale is made after litigation in the case is ended; for, as we have before seen, a judicial act is something done during the pendency of a suit. The suit does not end with a decree of sale; the proceeding still continues until final confirmation." Ror. Jud. Sales, § 18; also § 1. *Williamson* v. *Berry*, 8 How. 495.

In the light of all the authorities the sale in this case is what is called a "judicial sale." It was made by the court, through

its agent or officer, in a pending suit, and the sale was by decree ordering the sale, expressly made to depend upon approval or confirmation by the court, and to that end it was directed to be reported to court, and the court is the vendor. The circuit court in this case has refused confirmation upon the case made before it; in the exercise of the discretion vested in it, has refused to confirm the sale, and the purchaser has appealed to this court to review and reverse the action of the court in refusing to sanction the sale to him.

The field which lies before us in the consideration of this question, has been so often explored, the road is so well defined, and the judicial sign-boards so numerous and so distinct, that the task is divested both of novelty and difficulty.

Mr. Barton says: "In Virginia, a bid by a purchaser to a commissioner, is a *bid to the court*, and if accepted he is bound by it, but the court and not the commissioner is the seller, and the confirmation by the court, and its direction to convey, are essential to the validity of *any sale* that the commissioner may make." Barton's Ch. P. 1070. And on page 1094: His bid at the commissioner's sale is a *mere offer*, and although after confirmation his title relates back to the day of sale, yet he has until confirmation to examine into the matter, and to enquire if there be any defects in the title. See, also, p. 1100, sec. 352.

But this question has been before this court and often considered. In the late case of *Langyher, trustee, v. Patterson & Bash*, Judge Fauntleroy says: "Confirmation is the judicial sanction of the court; and by confirmation the court makes it a sale of its own, and the purchaser is entitled to the full benefit of his contract, which is no longer *executory* but *executed*, and which will be enforced against him and *for him*." 77 Va. Rep. 473.

In the case of *Brock v. Rice*, 27 Gratt. 812, Judge Staples said: "In considering this case, it is important to bear in mind rules of law governing judicial sales All the authorities agree there is a wide distinction between an application to set aside a sale after it is approved by the court, and an application to with-

hold a confirmation. A decree of confirmation is a judgment of the court, which determines the rights of the parties. Such a decree possesses the same force and effect of any other adjudication by a court of competent jurisdiction. But before confirmation the whole proceeding is *in fieri*, and under the control of the court. *Until then the accepted bidder is not regarded as the purchaser.* His contract is incomplete, and he acquires by his bid no independent right to have it perfected." * .* *

" It is very certain that with us the commissioner conducting a sale is regarded merely as the agent or servant of the court, and his proceedings are necessarily subject to its revision and control. Whether the court will confirm the sale must, in a great measure depend upon the circumstances of each particular case. It is difficult to lay down any rule applicable to all cases; nor is it possible to specify all the grounds which will justify the court in withholding its approval. This discretion is not arbitrary, but a sound legal discretion," &c. Citing *Taylor* v. *Cooper*, 10 Leigh, 327, opinion of Tucker, P. The sale is not conclusive until confirmed. *Davy* v. *Barber*, 2 Atk. 490; *Blount* v. *Blount*, 3 Atk. 638.

When the sale is confirmed, that is where *both contracting parties concur in ratifying* the inchoate purchase, the confirmation relates back to the sale, &c. *Anson* v. *Towgood*, 1 Jacobs & Walk. 617.

Before confirmation of the report, indeed, and while the cause is yet pending in a court of chancery, to that tribunal alone can the purchaser resort for the adjustment of his rights, and the enforcement of his claim. *Creeds* v. *Pendleton*, 1 Leigh, 297; *Heywood* v. *Covington's heirs*, 4 Leigh, 373; *Daniel* v. *Leitch*, 13 Gratt.

In *Brock* v. *Rice*, Judge Staples cites Rorer on Judicial Sales, pp. 30, 55, 56. On these pages, Mr. Rorer, in treating of the confirmation of the sale, says: " Confirmation is the judicial sanction of the court. Until then the bargain is incomplete (citing *Koehler* v. *Ball*, 2 Kan. 166, 172). Until confirmed by

the court, the sale confers no rights. Until then it is a sale only in a popular and not in a judicial or legal sense. The chancellor has a broad discretion in the approval or disapproval of such sales. The accepted bidder acquires, by the acceptance of his bid, no independent right, as is the case of a purchaser at a sale under execution, to have his purchase completed, but is merely a preferred proposer, until confirmation by the court of the sale, as agreed to by its ministerial agent. In the exercise of this discretion a proper regard is had to the interest of the parties and the stability of judicial sales. By sanctioning a sale, the courts make it their own. There is a difference between such sales, and ordinary auction sales, and sales by private agreement. In cases of sales before a master, the purchaser is not considered as entitled to the benefit of his contract till the master's report of the purchaser's bidding is absolutely confirmed."

· Such, says Mr. Rorer, is the rule, whether the sale be by a master commissioner, or other functionary authorized by the court to conduct the sale. The bargain is not ordinarily considered as complete until the sale is confirmed and the conveyance is made. 2 Daniel Ch. 1454; *Rawlings* v. *Bailey*, 15 Ill. 178; *Blossom* v. *R. R. Co.*, 3 Wall. 207; *Childress* v. *Rust*, 2 Swan (Tenn.) 487; *Valler* v. *Fleming*, 19 Mo. 454; *Webster* v. *Hill*, 3 Sneed (Tenn.) 333; *Henderson* v. *Herrod*, 23 Miss. (1 Cush) 434; *Young* v. *Keogh*, 11 Ill. 642; *Wallace* v. *Hale*, 19 Ala. 367.

In the case of *Davis* v. *Stewart*, 4 Texas Rep. 226, the court says: "It will be seen, much discretion is left to the judge; if he should believe that the sale was not fair, or that it was not made in conformity with law, it would be his duty to set it aside, and order it to be sold again. He is not required to place upon the record the reasons by which he is governed, either in confirming or rejecting a sale. The purchaser could not be injured; when he bid for the land he was aware that he was purchasing subject to the confirmation or rejection of the sale by the probate judge; and if he wished to do so, he could

be again a bidder at the second sale. If the decision of the judge on the question of confirmation *is subject to revision at all,* this is clearly not a case that would call for the interposition of a higher tribunal." 4 Texas, 226.

In the case of *Henderson* v. *Herrod,* the high court of errors and appeals of Mississippi, says: "Prior to the confirmation, the whole subject matter is *in fieri* and under the control of the court, subject to the exercise of a sound discretion in regard to it." 10 Miss. Rep 454.

In the case of *Taylor* v. *Gilpin,* the court of appeals of Kentucky reäffirms an often repeated rule of that court, the court in that case saying: "The application to the chancellor was not to disturb a sale which he had approved, but it was to reject a bid or proposal which had been offered. This court has time and again held that a purchaser of property, under a decretal sale, does not acquire any independent right by his purchase *until* after the same has been approved by the chancellor. He is simply an accepted or preferred bidder; and whether his bid or proposal will be approved, depends upon the sound, equitable discretion of the court having control of the cause." 3 Met. 546. See also 3 Dana 614; 2 B. Mon. 410; 5 B. Mon. 494.

This is a proceeding, it will be remembered, not to sell this land to pay any creditor a debt which had been long delayed in collection, nor to satisfy any lien of any creditor; but it is a sale to convert the devised land into money, to satisfy the several bequests under the will of the testatrix in their order, to pay off the special legacies, and for distribution of the residue among the residuary legatees, and is a proceeding analogous to the sale of land made under proceedings for partition, or sale and distribution among the heirs of a decedent, where it would appear to be the first duty of the court in the premises to so sell the land as to make it bring as much as possible.

In the matter of the sale of the real estate of Hamilton's estate, reported in the 51st volume of Pennsylvania State Reports,

entitled "*Hay's Appeal*," p. 59, Justice Strong, delivering the opinion of the supreme court of that state, said: "This appeal is founded upon a misapprehension of the relations between the parties. Heirs of a decedent, when parties to a proceeding for partition, stand in no relation of trust or confidence to the bidders at the sale; and even the highest bidder, whose bid has been returned to the court as the best offered, has acquired no right which debar the heirs or their counsel from endeavoring to have his bid rejected and a re-sale ordered. It is their right to have as much obtained for the property as can be, and until a sale has been made and confirmed, they may seek for purchasers who are willing to give more for the property than was offered at public auction. They may ask the court to open the biddings, to order a new exposure of the property to auction. This is no wrong to the person who bid most at the former auction. His bid, though the highest, was but an offer to purchase, subject to the approval or disapproval of the court, and in approving sales made in partition, it is the duty of the court to regard primarily the interest of the heirs. The appellant, then, in this case has no reason to complain.

Again, it is insisted that it was irregular to set aside the sale to the appellant without notice to him. This assumes that he had an interest in the land when his bid had been returned as the highest. This may be doubted. It is enough to say that the appellant's bid was but an offer to the court, which the court might or might not accept at its discretion. *He stood in the situation of a bidder at a master's sale in chancery. It is by no means certain that he had anything to do with the question upon which the court acted.* When the confirmation was resisted, for the reasons that the bid was less than the appraised value of the land, and that another exposure to sale would result in securing a larger price, it is not clear that the court should have directed any notice to him. The appeal is dismissed," &c. 51 Penn. St. Rep. 61.

In the supreme court of Ohio, in the case of the *Ohio Life*

*Insurance and Trust Co.* v. *Gibbon and others,* reported in 10
Ohio St. Rep. 563, Judge Peck, delivering the opinion of that
court, in which all the other judges concurred, said: "The
power to confirm or set aside, if properly exercised, will afford
ample protection to the parties and to the purchaser, and there,
in our judgment, *this summary* power of the court over the
matter should terminate." If, from misapprehension or other
cause, the sale ought not to be confirmed or made, the *best and
only proper remedy is a re-sale,* with or without a revaluation, as
justice may require.

It cannot be necessary to multiply decisions upon this ques-
tion, which, although of the greatest importance, has been so
often considered by the courts of last resort in this and other
states, as to make the chief difficulty in citation of authorities
one of selection merely, and the cases are all one way. In all
the numerous cases we have examined, in the wide search we
have not found an adverse decision; not one has been cited in
argument by the able and distinguished counsel who argued
this case for the appellant. We have found no case, and it is
believed that none can be cited, in which an appellate court
has decreed that a contract had been made by the purchaser
with the court, before the sale had been confirmed by the
court, or his bill accepted by the court as the vendor, and re-
viewed and reversed the action of the court below in its exer-
cise of this its wide discretion as the vendor, to reject any bid;
that this discretion is a wide discretion cannot be denied in the
face of the decided cases.

One respectable authority goes so far as to declare that the
court is clothed with an *unlimited discretion* to confirm a judicial
sale, or not, as may seem wise and just. Confirmation is final
consent; and the court being the vendor, it may consent or
not, at its discretion. Rorer on Judicial Sales, p. 56, cited by
Judge Staples in *Brock* v. *Rice.*

We might well rest our decision in this case here, and dis-
miss this appeal. But a slight examination will show, upon an

inspection of the record, that this sound legal discretion of the circuit court was wisely exercised in this case. By whom is this confirmation recommended? By no party or witness in the record except the purchaser. The agent, or servant of the court, the executor appointed to sell under the decree of the court, does not recommend to the court the confirmation. He says the amount realized will be more than enough to pay off the special legacies, and he submits his report to the court for its action. This commissioner does not even say to the court that the land sold for a fair and an adequate price. He says it was an open and fair sale, but he does not say that the price was reasonable. The purchaser himself does not assert that he has paid a reasonable price for the land; he says, that the fact that he has a good bargain, is no reason for *setting aside the sale.* He claims upon the ground of a completed contract.

If the court was to wisely exercise its sound legal discretion in the premises, it must do so *upon the evidence before it.*

How was the objection to confirmation supported? Four appraisers appointed by the court in which this executor qualified, upon a personal examination of the lands, and upon oath, valued it at nearly double the amount bid for it by the appellant. Ten unimpeached citizens of the county living in the immediate vicinity of this land, some of them coterminous owners, and some of them actually living upon this land as tenants, and all well acquainted with the land, upon oath say, that this land is worth, some of them, double, some of them, three times the price at which it was bid in by the appellant. And some of them say that the annual rental of this land is eleven hundred dollars, while the bid of this appellant was $6000.

These affidavits, gotten up in the short time allowed, the report being filed only in term, are treated very lightly by the learned counsel for the appellant. It is argued that they are easily obtained, etc. If so, why not find some one in the large crowd drawn together by court-day, to contradict the very important statements contained in them; and if it so happened

that the evidence was obtainable, but not conveniently at hand, why not produce it before the court in some form? It must have been upon the idea that the court had no discretion in the premises, however great the inadequacy of the price offered.

But, as we have seen, the court was bound to exercise a sound legal discretion in accepting this bid or rejecting it, and a fundamental consideration with the court was obliged to be as to a sufficiency of the amount offered; and this discretion should be exercised upon evidence adduced before it.

It is not remarkable that a court should refuse to confirm a sale, when no person, not even the commissioner reporting it, could be found to say the price offered was adequate. The purchaser was one of the residuary legatees; he was entitled to one-fourth of the residuum; if the sale was confirmed to him, he lost all interest under the will. Yet he insists that his bid shall be accepted; he regards the advantage he has obtained over the other residuary legatees as greater than his interest under the will.

It was the duty of the court, in administering this estate, to have a due and just regard to the rights of all parties in interest, and to sell the land for the best price obtainable. There was no error in the decree complained of, and the same must be affirmed.

DECREE AFFIRMED.