## Richmond.

## SPROUL AND ANOTHER V. HUNTER, EXECUTOR, AND OTHERS.

### November 15, 1917.

1. EXECUTORS AND ADMINISTRATORS—*Resort to Court for Direction and Advice.*—Although executors have power under the will to sell the property belonging to the estate, the possession of such authority in no way deprives them of the right to go into a court of equity for aid and guidance in the discharge of their duties; and to have the property sold under its decree.

2. JUDICIAL SALES—*Sales by Executor under Order of Court.*—A sale made by order of a court of competent jurisdiction, *pendente lite,* is a judicial sale. Thus, where an executor having authority under a will to sell land, declines to exercise his authority, but applies to the court for instructions and directions, and is ordered to make sale and to report it to the court for confirmation, which he does, the sale is a judicial sale.

3. JUDICIAL SALES—*Sale of Land by Executors under Direction of Court—Case at Bar.*—A testator by his will authorized his executors to sell his farm, estimated by the testator in the will to contain about 775 acres, and invest the proceeds. Under the will the executors were authorized to sell and reinvest all the real estate owned by the testator at his death. Notwithstanding these provisions, the executors invoked the instruction and direction of the Corporation Court of the city of Staunton in the discharge of their duties by a bill of conformity. The corporation court assumed jurisdiction of the suit and the administration of the estate, making the necessary orders therein as occasion required. The executors conceiving that a sale of the farm would be advantageous, listed the same with a real estate agent to procure a purchaser; and it was described by the agent as containing 800 acres. The agent procured appellants as prospective purchasers and submitted an offer in writing by them to purchase the farm and personal property upon it for $50,000. This was accepted by the resident executor subject to the approval of his co-executor, and the further confirmation of the court. The co-executor signified his approval of this acceptance. The executors then filed their petition in the suit for conformity for the purpose of

obtaining the sanction and approval of the court to a sale of the farm. The court passed a decree, directing the executors to sell the farm in pursuance of the prayer of their petition. Accordingly, by deed bearing even date with the petition and decree, a conveyance was made by the executors to appellants, reciting the decree authorizing and directing the sale for the consideration named in the written proposal of the farm in question, described as "containing 800 acres more or less." The executors then filed their report of the sale and requested the approval by the court of their action, and that the sale be confirmed. The court thereupon entered a decree declaring that the sale had been made in pursuance of the former decree, that the land brought a fair price, that the action of the executors was approved, and, therefore, ratified and confirmed the sale.

*Held:* That the sale was a judicial one, and that the appellants were not entitled to an abatement of the purchase money to the extent of the alleged deficiency in the land.

4. JUDICIAL SALES—*Caveat Emptor*—*Case at Bar.*—Under the circumstances set forth in syllabus 3, testator's will was the source of appellant's title, and that instrument and the petition for the sale apprised the intending purchasers that the farm for which they were negotiating was supposed to contain 775 acres. Still, they stood by and suffered the court to direct the sale upon that assumption, and afterwards to confirm it, without objection. At a subsequent term, it is true, they sought the aid of the court to relieve themselves from the consequences of an assumed deficiency of acreage in the farm. But the sale was a judicial sale, and the doctrine is well settled in this jurisdiction that the principle of *caveat emptor* strictly applies to judicial sales. Speaking generally, all objections of which the party complaining had previous knowledge come too late after a decree of confirmation.

Appeal from a decree of the Corporation Court of the city of Staunton, in a cause in which appellants were allowed to file their petition against the appellees, executors under the will of Robert W. Burke, deceased. From a decree dismissing the petition, petitioners appeal.

*Affirmed.*

The opinion states the case.

*Bumgardner & Bumgardner,* for the appellants.

*J. M. Perry,* for the appellees.

WHITTLE, P., delivered the opinion of the court.

The essential facts and circumstances of this litigation will sufficiently appear from the discussion of the questions involved.

In the year 1905, the executors and trustees under the will of Robert W. Burke, deceased, filed a bill for conformity against the beneficiaries of the estate, in the Corporation Court of the city of Staunton, invoking the instruction and direction of the court in the discharge of their duties. The bill also contained the prayer that plaintiffs be authorized to sell certain bank stock belonging to the estate to pay debts; that proper compensation be allowed the executors; that they be permitted from time to time to settle their accounts in the suit, and for general relief. The corporation court assumed jurisdiction of the suit and the administration of the estate, making the necessary orders therein as occasion required, and the case has remained on the docket hitherto.

Among other property belonging to the estate was a valuable farm located in the vicinity of Staunton, which is described in the will as containing about 775 acres. The will invested the executors with extensive powers as trustees in the management of the estate; and authorized them, in their discretion, to sell, publicly or privately, and convey any real estate owned by the testator at his death, and to reinvest the proceeds upon the trusts set out in the will. But in case of sale of the 775-acre farm, the proceeds were directed to be invested separately and kept apart from the

rest of the estate such proceeds to stand as the representative and substitute of the farm for all purposes of the will. The executors conceiving that a sale of the farm would be advantageous, listed the same with a real estate agent to procure a purchaser; and it was described by the agent as containing 800 acres. The agent procured appellants as prospective purchasers, and on January 19, 1917, they submitted to him an offer in writing to purchase the farm "containing approximately 800 acres, * * * together with all implements, horses, harness and colts on the place, including also the corn, fodder and growing crops exclusive of the tenants' share," for $50,000; $10,000 in cash on delivery of a good and sufficient deed; and the residue to be evidenced by five bonds, each for the principal sum of $8,000, bearing 6 *per cent.* interest, payable in one, two, three, four and five years, with privilege of anticipating any or all of the said bonds at any regular interest period. On the same date the appellee, Hunter, addressed to the real estate agent his acceptance of the offer, "subject to the approval of my co-executor, E. Butler Burke, and the further confirmation of the court." The co-executor having signified his approval of the conditional acceptance of Hunter, the executors, on January 20, filed their petition in the suit for conformity in which they alleged, that they were invested with full power and authority by testator's will to sell any part of the estate, including the 775-acre farm, the proceeds of which, in the event of a sale, were to be reinvested in accordance with the provisions of the will; that they were satisfied that a sale would promote the interests of all persons interested in the estate; yet, they did not care to take that step without first securing the approval and direction of the court, which had theretofore been and still was engaged in the administration of the estate; and that it was for the purpose of obtaining the sanction and approval of the court that they filed their petition; that if the court

concurred in the opinion of petitioners that the farm should be sold, they prayed to be authorized to employ a real estate agent to assist them in effecting the sale. The petition concluded with the general prayer for a decree directing the sale and reinvestment of the proceeds. On the same day the court passed a decree, directing the executors to sell the farm in pursuance of the prayer of their petition.

Accordingly, by deed bearing even date with the petition and decree, a conveyance was made by the executors to appellants, H. B. Sproul and D. G. Ruckman, reciting, among other things the decree of the corporation court authorizing and directing the executors to sell the farm at their discretion, and in their judgment, and for the consideration named in the written proposal, of the farm in question, described as "containing 800 acres more or less." On January 22 the executors received the cash payment and bonds for the deferred instalments, and delivered the deed to the purchasers. On January 27 they filed their report of sale, which recited that the sale was made "in pursuance of the decree entered herein on January (20) 1915," the receipt of the cash payment and bonds for the purchase price, and conveyance of the land to the purchasers. The executors requested the approval by the court of their action, and that the sale be confirmed. Thereupon, the court entered a decree declaring that the trustees had properly exercised their discretion under the will, that the sale had been made in pursuance of the former decree, that the land brought a fair price, that the action of the trustees in connection therewith was approved, and, therefore, ratified and confirmed the sale. The decree also approved and confirmed the compensation allowed the real estate agent and directed its payment.

On March 11 the purchasers filed their petition in the cause, in which, after setting out the terms of their offer

to purchase the land, they represented that the farm was composed of four contiguous tracts of land, containing in the aggregate 806 acres and 30 poles; that petitioners' purchase included the four tracts, and that the sale was consummated on January 22 (by payment of $10,000 and the delivery of the bonds) in accordance with the written offer on their part, and the delivery of the deed by the executors; that the sale was by the acre and the farm was guaranteed to contain 800 acres, the purchase price being $48,000 or $60 per acre; that the additional $2,000 constituted the price of the personal property on the land, which was sold along with the farm, making the total consideration $50,000, as set out in the deed. The petition went into details in respect to the alleged shortage in acreage, which it is unnecessary to relate, and prayed an abatement of the purchase money to the extent of the alleged deficiency in the land.

The executors made specific answer to all the material averments of the petition, and controverted petitioners' right to any relief in the premises. The cause was heard on the pleading and evidence, and the decree under review dismissing the petition was entered.

In their answer respondents suggested that if the court should be of opinion that petitioners had been misled to their injury, that the proper measure of relief would be to place all parties *in statu quo* by rescinding the sale.

We are of opinion that in no aspect of the case were appellants entitled to relief.

I. At the date of appellants' offer to purchase the farm, E. B. Burke was living in the city of Washington; his co-executor, C. S. Hunter, was on the ground and practically conducted the negotiations on behalf of the estate. The farm was estimated by the testator in his will to contain about 775 acres. and Hunter did not observe that the deed to Sproul and Ruckman described it as 800 acres, more or

less. Immediately on his attention being called by Sproul
to the claim of the purchasers for an abatement of the pur-
chase money on account of the alleged shortage, the fol-
lowing colloquy ensued: Sproul suggested that he would
have the land surveyed, in which suggestion Hunter ac-
quiesced, and remarked, "if the farm ran over—decidedly
over," with the approval of the court, the purchasers would
get the benefit of the excess. But Sproul insisted that Hun-
ter should also' guarantee the shortage, if any, which he
declined to do. He proposed, however, to return the cash
payment and deliver up the bonds, and bear the loss of the
revenue stamps on the deed, "and call the matter off." This
counter proposition, Sproul declined, remarking that he had
paid a fee for examining the title. Hunter then expressed
his willingness to bear one-half of that expense, but Sproul
rejected both offers. In point of fact the land has never
been surveyed, and the alleged deficiency was not otherwise
shown to exist.

II. Viewing the controversy from a different angle, we
are of opinion that the sale was a judicial sale. The minds.
of the parties never met on any other hypothesis. The ex-
ecutors had already invoked the aid and direction of the
court in the administration of the estate and the discharge
of their duties as executorial trustees. The court had as-
sumed jurisdiction of the parties and the subject matter,
and, from time to time, entered decrees in furtherance of
the objects of the suit. In these circumstances, it was
plainly the duty of the executors, whatever may have been
their powers under the will, to submit this transaction, per-
haps the most important that had arisen in the course of
their administration, to the judgment and decision of the
court. Accordingly, Hunter's acceptance of appellants'
tentative offer to purchase the farm was expressly made
subject to the confirmation of the court. This qualified ac-
ceptance was approved by his co-executor and received

without objection by the appellants; and there is nothing in the record to suggest bad faith on the part of the executors in pursuing that course. The procedure adopted by counsel for the executors to effectuate the purpose of the parties was customary and proper. The petition and decree prepared for the court's action were submitted to counsel for the appellants, and (with full apportunity for examination, and investigation of matters to which they called attention) without objection, the decree ordering tne sale was entered; and subsequently the report of sale, likewise without objection, was approved and confirmed by a decree of the court.

It is the settled rule in this State that although executors have power under the will to sell the property belonging to the estate, the possession of such authority in no way deprives them of the right to go into a court of equity for aid and guidance in the discharge of their duties, and to have the property sold under its decrees. *Shepherd* v. *Darling,* 120 Va. 91 S. E. 737; *Gooch* v. *Old Dom. Tr. Co.,* 121 Va., 92 S. E. 846.

Testator's will was the source of appellants' title, and that instrument and the petition for the sale apprised the intending purchasers that the farm for which they were negotiating was supposed to contain 775 acres. Still, they stood by and suffered the court to direct the sale upon that assumption, and afterwards to confirm it, without objection. At a subsequent term, it is true, they sought the aid of the court to relieve themselves from the consequences of an assumed deficiency of acreage in the farm. But we think it clear that the sale was a judicial sale, and the doctrine is well settled in this jurisdiction that the principle of *cavoat emptor* strictly applies to judicial sales. Speaking generally, all objections of which the party complaining had previous knowledge come too late after a decree of confirmation. The case of *Long* v. *Weller,* 29 Gratt. (70 Va.)

347, 371, is a leading case on the subject. The opinion was delivered by Burks, J., who cites in support of the principle above announced the following cases: *Throlkolds* v. *Campbell*, 2 Gratt. (43 Va.) 198, 44 Am. Dec. 384; *Daniel* v. *Leitch*, 13 Gratt. (54 Va.) 195, 212-213; *Watson* v. *Hoy*, 28 Gratt. (69 Va.) 698, 711.

There is striking resemblance between the case in judgment and that of *Terry* v. *Coles*, 80 Va. 695, 700-702; indeed, the two cases are not distinguishable in principle. In the latter case it was held: "Sale made by order of a court of competent jurisdiction, *pendente lite,* is a judicial sale. An executor having authority under the will to sell land, declines to exercise his authority, but applies to the court for instructions and directions, and is ordered to make sale and to report it to the court for confirmation; whereupon he makes and reports the sale to the court as ordered, such a sale is a judicial sale."

These cases sufficiently illustrate the controlling principles involved in this case, and render the further review of the authorities unnecessary.

Upon the whole case, we think the decree of the corporation court was plainly right, and it must be affirmed.

*Affirmed.*